**Eileen M. THOURNIR, Plaintiff,**

v.

**Natalie MEYER, Secretary of State for the State of Colorado; State of Colorado, Defendants.**

**No. 82–C–1716.**

United States District Court, D. Colorado.

March 8, 1989.

David H. Miller, A.C.L.U., Denver, Colo., for plaintiff.

Maurice Knaizer, First Asst. Atty. Gen., Denver, Colo., for defendants.

## ORDER

CARRIGAN, District Judge.

In 1982, the plaintiff commenced this action under 42 U.S.C. § 1983 challenging the constitutionality of Colo.Rev.Stat. § 1–4–801(1)(i). That statute requires a person seeking to run for public office as an unaffiliated candidate to be registered in Colorado as an unaffiliated voter for at least one year prior to filing a nominating petition. Plaintiff sued the Colorado Secretary of State and the State of Colorado as defendants, seeking injunctive and declaratory relief, and damages.

Plaintiff moved to Colorado in February 1981. She registered as an unaffiliated voter on July 14, 1982. On August 19, 1982, she filed nominating petitions as an unaffiliated candidate for Congress, in the First Congressional District, with the Colorado Secretary of State. Although it initially appeared that the plaintiff's petitions complied with the applicable statutory requirements, it was subsequently determined that the plaintiff did not meet the one-year registration requirement.

The Colorado Secretary of State sued in state court, pursuant to Colo.Rev.Stat. § 1–1–112, to have the plaintiff declared ineligible as a candidate. The state court judge upheld the constitutionality of § 1–4–801(1)(i) and ordered the secretary of state not to certify the plaintiff's name to the ballot. On October 1, 1982, the Colorado Supreme Court refused to review that decision.

In October 1982, the plaintiff sued in federal court and sought a preliminary injunction to have her name placed on the ballot for the November 1982 general election. I denied the plaintiff's motion, and the Court of Appeals for the Tenth Circuit denied her request for immediate relief from that order. The Tenth Circuit later dismissed her appeal as moot. *Thournir v. Buchanan*, 710 F.2d 1461 (10th Cir.1983).

Both parties then moved for summary judgment. I dismissed the plaintiff's lawsuit on the ground that the prior state court judgment precluded her constitutional challenge to the Colorado statute. The Tenth Circuit Court of Appeals reversed, *Thournir v. Meyer*, 803 F.2d 1093 (10th Cir.1986), and the matter is again before me on the parties' cross motions for summary judgment.

The parties have supplemented their original briefs with additional case authority, and have indicated that this action can be decided on the pleadings. Defendants also have moved to dismiss this action as moot on the strength of *Meyer v. Grant*, — U.S. ——, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), and to strike the plaintiff's third supplemental notice of authorities.

■ Plaintiff's action is not moot, since the issues raised are capable of repetition, yet evading review. Defendants' motions to dismiss and to strike are denied.

With respect to the parties' dispositive motions, all issues have been fully briefed and oral argument would not materially assist my decision. Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343.

The above statement of facts appears to be undisputed. In addition, the plaintiff is and has been a member of the Socialist Workers Party ("SWP"), having joined that party in 1976 when she lived in California. She asserts that she has been affiliated with the SWP continuously to the exclusion of all other political parties and organizations. Regardless of her SWP membership, the plaintiff was required to register as "unaffiliated" in July 1982 pursuant to a then-existing Colorado statute that permitted a voter to register only as a Democrat, a Republican or Unaffiliated. Plaintiff has stated in an affidavit that she did not register earlier because she was unaware of § 1–4–801(1)(i)'s time requirements, and because she did not decide to run for public office until February 7, 1982.

■ Initially I conclude that the State of Colorado and the Secretary of State are immune from liability for damages. The State is shielded by the Eleventh Amendment to the United States Constitution. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The defendant Secretary has been sued in her official capacity, and all actions taken by her were performed pursuant to her official duties. *Id.* at 101–02, 104 S.Ct. at 908–09. In addition, Colorado is not a "person" within the meaning of 42 U.S.C. § 1983 and may not be sued under that statute. *Quern v. Jor-*

*dan,* 440 U.S. 332, 343, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979); *Holladay v. State of Montana,* 506 F.Supp. 1317, 1321 (D.Mont. 1981). Defendants' motion for summary judgment is granted as to the defendant Secretary of State with respect to the plaintiff's claim for damages. Defendants' motion likewise is granted as to the defendant State of Colorado, but as to all claims, and the complaint and action against the defendant state are dismissed with prejudice.

Section 1–4–801(1)(i) provides in pertinent part as follows:

"No person shall be placed in nomination by petition unless the person is a registered elector of the political subdivision or district in which the officer is to be elected and *unless* he was *registered as unaffiliated,* as shown on the books of the county clerk and recorder, for *at least twelve months prior to the date of filing* of the petition; except that, if such nomination is for a nonpartisan election, such person shall be a registered elector of such political subdivision or district and be a registered elector, as shown on the books of the county clerk and recorder, on the date of the earliest signature on the petition." (Emphasis added.)

In assessing the constitutional validity of this statute, the plaintiff urges that I apply the "strict scrutiny" standard of review. Under this standard, ballot access restrictions can be sustained only if they further a vital or compelling governmental interest that can be achieved without unfairly or unnecessarily burdening either a minority party's or an individual candidate's equally important interests in the continued availability of political opportunity. *Buckley v. Valeo,* 424 U.S. 1, 93–94, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

The Court of Appeals for the Tenth Circuit recently noted that the United States Supreme Court has not always been consistent in articulating the standard that courts should apply when considering the constitutionality of statutes pertaining to ballot access. *Rainbow Coalition of Okla-*

*homa v. Oklahoma State Election Bd.,* 844 F.2d 740 (10th Cir.1988). In *Rainbow Coalition,* the Court of Appeals, citing *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), applied the following analytical process in evaluating an Oklahoma statute that pertained to minority party ballot access, stating that the court:

"must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Id.,* 844 F.2d at 743, citing *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570.

The test set forth in *Rainbow Coalition* applies to the constitutional issues asserted by the plaintiff in the instant lawsuit.

As the Tenth Circuit noted in *Rainbow Coalition,* state statutes that restrict a political party's access to the ballot infringe upon the rights of persons to associate for political purposes, as well as upon the rights of qualified voters to vote effectively. *Id.,* 844 F.2d at 743, citing *Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986). However, these rights are subject to state limitation. *Id.* And, as has been noted with respect to constitutional challenges aimed at statutes that regulate political *candidates'* durational residency requirements, the law is unsettled whether the right to hold public office is a fundamental constitutional right. *Hankins v. State of Hawaii,* 639 F.Supp. 1552, 1555 (D.Haw.1986).

In a somewhat analogous case, *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the United States Su-

preme Court considered a California statute that forbade ballot position to an independent candidate seeking elective office if that candidate, *inter alia,* had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary election. In sustaining the constitutionality of that state provision, the Supreme Court acknowledged that a state must not overburden the rights to associate and to vote effectively, and thus must provide feasible means for minority parties and candidates to have ballot access. However, against these rights must be weighed the State's interests in insuring political stability, avoiding voter confusion, preventing the clogging of election machinery, and protecting the integrity of its political processes from frivolous or fraudulent candidates. The Supreme Court stated in pertinent part as follows:

"The requirement that the independent candidate not have been affiliated with a political party for a year before the primary is expressive of a general state policy aimed at maintaining the integrity of various routes to the ballot. It involves no discrimination against independents."

\*　　\*　　\*　　\*　　\*　　\*

"The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. The provision against defeated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified. The people, it is hoped, are presented with understandable choices and the winner in the general election with sufficient support to govern effectively."

"[The California statute] protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies

prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party." *Id.* at 733, 735, 94 S.Ct. at 1280, 1281.

I recognize that the facts in the instant case are quite different from those considered in *Storer v. Brown, supra.* The instant plaintiff moved to Colorado from California in February 1981. She registered as an "unaffiliated" voter on July 14, 1982 and sought Congressional candidacy in the November 1982 general election. Had the plaintiff registered as "unaffiliated" within thirty days of moving to Colorado, she would have been eligible to run for Congress in the November 1982 election, assuming *arguendo*, that she had satisfied all other requirements.

■ However, I conclude that the situation here presented falls within the general circumstances addressed by the Supreme Court in *Storer v. Brown, supra.* Colorado's statute, like the California statute, does not discriminate unfairly against independent candidates. Rather, the statute works against would be independent candidates prompted by short-range political or personal motives, or who seek to bleed off votes in the general election that otherwise might go to a particular major party candidate. Colorado has an interest in insuring that voters are not presented with a "laundry list" of candidates who have decided on the eve of a major election to seek public office. I thus disagree with the plaintiff's contention that the *Storer* reasoning does not apply to the instant case.

Plaintiff's argument that she had at all times been a member of the SWP does not help her situation. No Colorado statute permits party affiliation to be transferred from one state to another. Moreover, each state may legitimately set its own general requirements regarding voter registration and political party status. *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

In her third supplemental notice of authorities, the plaintiff cites the unpublished decision of *Colorado Democratic Party and Seawell v. Meyer,* No. 88CV7646 (District Court for the City and County of Denver, State of Colorado, May 2, 1988). That decision held unconstitutional Colo. Rev.Stat. § 1-4-601(4) and § 1-4-101(3). Section 1-4-601(4) provided that no person shall be eligible for designation by assembly as a primary election candidate unless that person has been affiliated with the political party holding the assembly for at least twelve months preceding the assembly date. Section 1-4-101(3) provided that a candidate shall not be placed on the general election ballot unless nominated in accordance with law, and affiliated with the designated political party for at least twelve months.

In *Seawell,* the State Democratic Party had amended its rules to permit a person seeking eligibility for assembly designation as a primary election candidate if that person had been a registered Democrat for at least twelve months prior to the general election. Chief Judge Flowers of the state district court determined that the state statutes conflicted with the Democratic Party's right to determine who may be a candidate under its party banner.

I note that the Democratic Party rules in *Seawell* imposed a twelve month affiliation requirement. Thus, I do not find the *Seawell* decision dispositive of the issues here presented by the plaintiff. Moreover, this unpublished state district court decision, while persuasive, is not binding authority.

It appears that the plaintiff's ineligibility has resulted, at least in part, from her own failure to become familiar with Colorado's election laws. After weighing the State's interests against the plaintiff's asserted rights, I find and conclude that, on the facts presented, Colorado's one year requirement of registration as "unaffiliated" as a prerequisite for running for public office, under these circumstances, is not unconstitutional.

Based on the undisputed facts as I have found them, the defendant Secretary is entitled to summary judgment in her favor.

Rule 56(c), Fed.R.Civ.P. Plaintiff's summary judgment motion is denied.

Accordingly, it is ORDERED that:

(1) Defendants' motions to dismiss this action as moot, and to strike the plaintiff's third supplemental notice of authorities, are denied;

(2) Plaintiff's motion for summary judgment is denied;

(3) Defendants' motion to dismiss or for summary judgment is denied in part and granted in part;

(4) Plaintiff's claim for damages against the defendant Secretary is dismissed;

(5) Plaintiff's complaint and action against the defendant State of Colorado are dismissed as to all claims; and

(6) Defendant's Meyer's motion for summary judgment is granted. Plaintiff's complaint and action are dismissed with prejudice. Each party shall bear its or her own costs.