**COLORADO LIBERTARIAN PARTY and Robin Heid, Petitioners–Appellants,**

v.

**SECRETARY OF STATE OF COLORADO, Natalie Meyer, in her official capacity and not individually, Respondent–Appellee.**

**No. 90SA382.**

Supreme Court of Colorado, En Banc.

Oct. 7, 1991.

Davis, Graham & Stubbs, Karen L. Page, Denver, for petitioners-appellants.

Gale A. Norton, Atty. Gen., Timothy K. Tymkovich, Sol. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Maurice Knaizer, Deputy Atty. Gen., Denver, for respondent-appellee.

Justice VOLLACK delivered the Opinion of the Court.

Appellants, the Colorado Libertarian Party (CLP) and Robin Heid (Heid), appeal the district court's ruling that the unaffiliation requirement in section 1–4–801(1)(i), 1B C.R.S. (1980), of the Colorado Election Code of 1980 does not violate appellants' right to political association, U.S. Const. amends. I & XIV; Colo. Const. art. II, § 5, or their right to equal protection of the laws, U.S. Const. amend. XIV; Colo. Const. art. II, § 25. We affirm.[1]

## I.

This action arises from appellant Heid's efforts to become the CLP candidate in the 1990 Colorado gubernatorial election. The CLP is the Colorado affiliate of the national Libertarian Party and is a "qualified political organization" within the meaning of Colorado Secretary of State Rule 16, 8 C.C.R. 1505–1 (1984).[2] The CLP has adopted a constitution and by-laws that outline its membership requirements and procedures for nominating CLP candidates. Membership in the organization occurs when an applicant either registers as a Libertarian voter in Colorado or pays the requisite membership fee established by the CLP Board of Directors, or both. The only requirement imposed on prospective CLP candidates is the submission of a signed statement by the candidate that he or she does not believe in or advocate the initiation of force as a means of achieving political or social goals.

Heid has been registered as a member of the Colorado Republican Party since April 25, 1980. On May 27, 1988, Heid also became a member of the CLP by paying a $25 membership fee to the CLP finance chairman, which entitled Heid to membership in the CLP for one year. In 1988, Heid circu-

---

1. Section 13–4–102(1)(b), 6A C.R.S. (1987), grants this court jurisdiction over appeals when the constitutionality of a statute is at issue.

2. Rule 16.1 defines a "qualified political organization" as

    one which has placed on the ballot at a congressional vacancy or general election a candidate for district or state office and whose officers have filed under oath with the Secretary of State the required proof of organization and which continues to meet the requirements of 16.3 [meet once a year] and 16.4 [place a candidate or candidates on the general election ballot every two years].

    A "political organization" is defined by statute as "any group of registered electors who, by petition for nomination of an independent candidate as provided in section 1–4–801, places upon the official general election ballot nominees for public office." § 1–1–104(17), 1B C.R.S. (1990).

    A political organization differs from a political party, which is defined as "any political organization which at the last preceding gubernatorial election was represented on the official ballot either by regular party candidates or by individual nominees only if it cast for its gubernatorial candidate at least ten percent of the total gubernatorial vote cast in the state at such election." § 1–1–104(18), 1B C.R.S. (1980).

lated a petition for nomination as the CLP candidate for the First Congressional District, but did not receive a sufficient number of signatures to be placed on the ballot. On April 21, 1990, Heid renewed his CLP membership by paying the $25 fee. In convention on that same day, the CLP nominated Heid as its candidate for Governor of Colorado in the 1990 gubernatorial election. At the time of Heid's nomination, he was both a member of the CLP pursuant to its by-laws and constitution and a member of the Republican Party by virtue of his registered affiliation with that party.

On June 9, 1990, Heid attended the Republican Party State Assembly as a candidate for the Republican nomination. Heid's name was placed in nomination, but before the votes were announced, Heid committed his votes to John Andrews, who won the Republican gubernatorial nomination. Pursuant to his nomination as the CLP candidate, Heid submitted a petition to appellee Secretary of State, Natalie Meyer, to have his name placed on the November 1990 ballot.[3] In a letter dated August 15, 1990, the State Elections Officer notified Heid that his petition had been rejected for his failure to register either as a Libertarian or as unaffiliated, and thus to disaffiliate himself from the Republican Party, at least one year prior to filing his petition for nomination, as required by section 1–4–801(1)(i), 1B C.R.S. (1980).

On September 4, 1990, the CLP and Heid filed a verified petition in district court pursuant to section 1–1–112, 1B C.R.S. (1980),[4] requesting the court to enjoin the Secretary of State from enforcing section 1–4–801(1)(i) against the CLP and Heid, to declare section 1–4–801(1)(i) unconstitutional, and to award the CLP and Heid costs and attorney's fees under 42 U.S.C. § 1983. The district court denied the appellants' request for relief based on its conclusion that section 1–4–801(1)(i) was constitutional and that the Secretary of State properly rejected Heid's petition for nomination.

## II.

We must determine whether the unaffiliation requirement in section 1–4–801(1)(i), 1B C.R.S. (1980), violates the rights of CLP and Heid to political association and equal protection of the laws under the United States Constitution and the Colorado Constitution.

Section 1–4–801 outlines the petition procedure by which candidates for public office who do not wish to affiliate with a political party may be nominated, other than by a primary election or a convention. For prospective candidates choosing this route to the ballot, section 1–4–801(1)(i) imposes a twelve-month unaffiliation requirement from a political party. Section 1–4–801(1)(i) provides in relevant part:

No person shall be placed in nomination by petition unless the person ... was registered as unaffiliated, as shown on the books of the county clerk and recorder, for at least twelve months prior to the date of filing of the petition....

In response to the Tenth Circuit's instruction in *Baer v. Meyer*, 728 F.2d 471

---

**3.** Section 1–4–801, 1B C.R.S. (1980 & 1990 Supp.), governs petitions for nominating candidates of political organizations pursuant to Rule 16.6, 8 C.C.R. 1505–1 (1984), which provides that "[c]andidates wishing to represent a qualified political organization on the General Election ballot shall be placed in nomination by independent nominating petition pursuant to C.R.S. 1–4–801."

**4.** Section 1–1–112(1), 1B C.R.S. (1980), governs election-related controversies and provides:
When any controversy arises between any official charged with any duty or function under [the Colorado Election Code of 1980] and any candidate, the officers or representatives of any political party, persons who have

made nominations, or any other person, the district court, upon the filing of a verified petition by any such official or person setting forth in concise form the nature of the controversy and the relief sought, shall issue an order commanding the respondent in such petition to appear before the court and answer under oath to such petition. The court shall summarily hear and dispose of any such issues with a view to obtaining substantial compliance with the provisions of this code by the parties to such controversy, shall make and enter orders and judgments, and shall issue the writ or process of such court to enforce all such orders and judgments.

(10th Cir.1984),[5] Colorado's Secretary of State refined the meaning of the word "unaffiliated" in section 1–4–801(1)(i), by promulgating Rule 16, 8 C.C.R. 1505–1 (1984), to allow candidates not affiliated with a political party to register as either unaffiliated or as affiliated with a "qualified political organization." Thus, "unaffiliated" as used in section 1–4–801(1)(i) now means unaffiliated with a political party. It is undisputed that the CLP is a "qualified political organization" within the meaning of Secretary of State Rule 16 and that section 1–4–801(1)(i)'s twelve-month unaffiliation requirement applies to all prospective candidates of the CLP by virtue of Rule 16.6, which advises that "[c]andidates wishing to represent a qualified political organization on the General Election ballot shall be placed in nomination by independent nominating petition pursuant to C.R.S. 1–4–801." As the CLP's 1990 gubernatorial candidate, Heid was therefore required to register either as unaffiliated or as a Libertarian twelve months prior to filing his petition for nomination.

### A.

We first address appellants' contention that the twelve-month unaffiliation requirement in § 1–4–801(1)(i) is an unconstitutional restriction on a political organization's right to choose its representative for public office in violation of the first and fourteenth amendments to the United States Constitution and article II, section 5, of the Colorado Constitution. We disagree.

The United States Supreme Court has approached the constitutionality of ballot access restrictions in an inconsistent manner, at times applying a strict standard of scrutiny, *see Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (19r8), and at other times employing a more flexible standard, *see Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986) (following *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974); there is "no litmus-paper test for separating those restrictions that are valid from those that are invidious.... Decision in this context ... is very much a 'matter of degree,' very much a matter of 'consider[ing] the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.'" (Citations omitted.)); *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). *See National Prohibition Party v. State*, 752 P.2d 80, 83 (Colo.1988) (the Supreme Court "has only provided limited definitive guidance in determining the validity of restrictions on ballot access."); L. Tribe, *American Constitutional Law* § 13–20 (2d ed. 1988) (discusses Supreme Court's inconsistent approach to ballot access cases).

This court has favored the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), wherein the Court advised that, in determining the constitutionality of a ballot access restriction, a court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for

5. Prior to the Tenth Circuit's decision in *Baer*, a person who was affiliated with a political organization was required to register as unaffiliated even though the organization had recognized officials and had previously placed a candidate on the ballot by petition. In *Baer*, the Tenth Circuit found that the Citizens Party of Colorado and the Colorado Libertarian Party qualified as organizations entitled to designation on the voter registration forms because they previously managed to field candidates on the ballots by the petition process. 728 F.2d at 476. The court cautioned that its opinion did not require the Secretary of State to recognize any political organizations other than the Citizens and Libertarian parties, and that it was the Secretary of State's responsibility to define the specifics for regulating which political organizations may be designated on voter registration forms. *Id.*

the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789, 103 S.Ct. at 1570. *See National Prohibition Party*, 752 P.2d at 83–84.

Appellants seek protection of their right to associate politically as guaranteed by the first and fourteenth amendments to the United States Constitution. *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). It is well understood that "[f]reedom of association is considered to be an element of the broad right to freedom of expression and protects 'the right of individuals to associate to further their personal beliefs.' " *State Bd. for Community Colleges and Occupational Educ.*, 687 P.2d 429, 439 (Colo.1984) (quoting *Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266 (1972)).

A disaffiliation requirement for prospective political candidates, such as the one at issue, directly impacts those aspiring to public office, rather than the voters. *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972). Although candidacy for public office has not been recognized as a fundamental right, *Bullock*, 405 U.S. at 142, 92 S.Ct. at 855, "laws that affect candidates always have at least some theoretical, correlative effect on voters." *Id.* at 143, 92 S.Ct. at 856. Thus, ballot access restrictions imposed on candidates necessarily implicate voters' freedom of association by limiting the field of candidates from which the voters might choose. *Celebrezze*, 460 U.S. at 787–88, 103 S.Ct. at 1569.

There is no question that political organizations enjoy the constitutionally protected freedom of association. *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 224, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989). This freedom to associate politically includes a voter's right to choose a political organization with which to associate, and a political organization's right to identify those people who constitute the association and to select a candidate who represents the organization's ideologies. *See id.* Therefore, restrictions on a political organization's access to an election ballot burden two fundamental rights: "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams*, 393 U.S. at 30, 89 S.Ct. at 10; *accord Munro*, 479 U.S. at 193, 107 S.Ct. at 536; *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979); *National Prohibition Party*, 752 P.2d at 83. Despite the fundamental nature of these rights, they are not absolute and are necessarily subject to limitation. *Celebrezze*, 460 U.S. at 788, 103 S.Ct. at 1569; *National Prohibition Party*, 752 P.2d at 83. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974); *see also Munro*, 479 U.S. at 193, 107 S.Ct. at 536. Indeed, "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Celebrezze*, 460 U.S. at 788, 103 S.Ct. at 1570.

We therefore must evaluate the state's interests in imposing a twelve-month unaffiliation requirement on prospective candidates of a qualified political organization, such as the CLP, to determine whether those interests justify the impingement on the organization's associational rights. The federal courts previously upheld the constitutionality of section 1–4–801(1)(i), 1B C.R.S. (1980), in *Thournir v. Meyer,* 708 F.Supp. 1183 (D.Colo.1989), *aff'd,* 909 F.2d 408 (10th Cir.1990). There, the plaintiff registered as unaffiliated in Colorado only one month before filing a nominating petition as an unaffiliated candidate for Congress, stating that she failed to register

early because she was unaware of section 1-4-801(1)(i)'s time requirement and that she had decided to run for office only six months prior to filing her petition. Applying the *Celebrezze* test, Judge Carrigan of the United States District Court for Colorado found that section 1-4-801(1)(i)

> does not discriminate unfairly against independent candidates. Rather, the statute works against would be independent candidates prompted by short-range political or personal motives, or who seek to bleed off votes in the general election that otherwise might go to a particular major party candidate. Colorado has an interest in insuring that voters are not presented with a "laundry list" of candidates who have decided on the eve of a major election to seek public office.

*Thournir*, 708 F.Supp. at 1187. In so holding, Judge Carrigan relied on the Supreme Court's resolution in *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), which we also believe to be dispositive.

In *Storer*, the Supreme Court upheld a California election statute that denied ballot access to an independent candidate seeking elective public office if the candidate had a registered affiliation with a qualified political party within one year prior to the immediately preceding primary election. *Id.* at 736, 94 S.Ct. at 1282. In finding California's disaffiliation requirement constitutional, the Court stated as follows:

> The requirement that the independent candidate not have been affiliated with a political party for a year before the primary is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot. It involves no discrimination against independents.

. . . .

The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. The provision against defeated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified. The people, it is hoped, are presented with understandable choices and the winner in the general election with sufficient support to govern effectively.

... [The disaffiliation statute] protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an "independent" candidate to capture and bleed off votes in the general election that might well go to another party.

... *It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status.*

*Storer*, 415 U.S. at 733–36, 94 S.Ct. at 1280–82 (emphasis added).[6] In our view, the state's compelling interest in "maintaining the integrity of the various routes to the ballot" is served by imposing the unaffiliation requirement on prospective candi-

---

6. The Supreme Court reaffirmed *Storer* in *Munro v. Socialist Worker's Party*, 479 U.S. 189, 198, 107 S.Ct. 533, 539, 93 L.Ed.2d 499 (1986). The Court noted, however, that the statute upheld in *Storer* imposed a disaffiliation requirement that, if unsatisfied, barred ballot access, *id.* at 198, 107 S.Ct. at 539, whereas the statute challenged in *Munro* imposed a restriction that did not bar access to primary election ballots, *id.* at 191–93, 107 S.Ct. at 535–36. Thus, while political orga-

nizations challenged ballot restrictions in both cases, only the *Storer* requirement raised "concerns of constitutional dimension" by virtue of its potential absolute ban on ballot access. Since the *Storer* court considered the constitutional concerns presented by a disaffiliation requirement, *Storer* thus provides the best framework for resolving appellants' constitutional challenge to section 1-4-801(1)(i)'s unaffiliation requirement.

dates of political organizations as well. We therefore hold that Colorado's one-year unaffiliation requirement preserves the state's compelling interest in "maintaining the integrity" of its ballot access system, *see Storer*, 415 U.S. at 733, 94 S.Ct. at 1280, and thus promotes the overall stability of the state's election process, without "unfairly or unnecessarily" impinging upon the CLP's associational rights. *See Clements v. Fashing*, 457 U.S. 957, 964, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) ("The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of political opportunity.'") (quoting *Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974)). "Although a disaffiliation provision may preclude ... voters from supporting a particular ineligible candidate, they remain free to support and promote other candidates who satisfy the State's disaffiliation requirements." *Celebrezze*, 460 U.S. at 792 n. 12, 103 S.Ct. at 1571 n. 12.

Our holding is consistent with other cases upholding state disaffiliation requirements. In *Anderson v. Hooper*, 632 F.2d 116 (10th Cir.1980), the Tenth Circuit relied on *Storer* to sustain the constitutionality of New Mexico's disaffiliation provision, which required independent candidates to have no political party affiliation after January 1 of the general election year. In *Davis v. State Election Board*, 762 P.2d 932 (Okla.1988), the Supreme Court of Oklahoma upheld a six-month disaffiliation requirement for independent candidates as "a reasonable ballot access restriction," stating that the statute "[did] not exclude independent candidates from the ballot. It merely insure[d] that one who files for office as an 'independent' is in fact nonpartisan." *Id.* at 934. *See also Rosario v. Rockefeller*, 410 U.S. 752, 758, 93 S.Ct. 1245, 1250, 36 L.Ed.2d 1 (1973) (court held that *voter* affiliation requirement served the legitimate state purpose of deterring party "raiding" and "did not constitute a ban on their freedom of association, but merely a time limitation on when they had to act in order to participate in their chosen party's next primary."). Similarly, section 1-4-801(1)(i) does not exclude CLP candidates from the ballot; it merely discourages those potential candidates "prompted by short-range political goals, pique, or personal quarrel," and disrupts the practice of diverting votes that might go to another political party or organization. *Storer*, 415 U.S. at 735, 94 S.Ct. at 1281.

Appellants cite *Tashjian v. Republican Party*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986), and *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), in support of their argument that section 1-4-801(1)(i) is an unconstitutional restriction on a political organization's right to choose its representatives. In *Tashjian*, the Republican Party of Connecticut challenged the constitutionality of a state statute requiring voters in any political party primary to be registered members of that party. The Republican Party had adopted a rule allowing independent voters to vote in Republican primaries. The Court struck down the state's enforcement of its closed primary system as an unreasonable burden on the first amendment rights of the Republican Party. *Tashjian*, 479 U.S. at 225, 107 S.Ct. at 554. In reaching this conclusion, the Court distinguished *Storer*, stating:

> The statute in *Storer* was designed to protect the parties and the party system against the disorganizing effect of independent candidacies launched by unsuccessful putative party nominees. This protection, like that accorded to parties threatened by raiding in *Rosario v. Rockefeller*, 410 U.S. 752 [93 S.Ct. 1245, 36 L.Ed.2d 1] (1973), is undertaken to prevent the disruption of the political parties from without, and not, as in this case, to prevent the parties from taking internal steps affecting their own process for the selection of candidates. The forms of regulation upheld in *Storer* and *Rosario* imposed certain burdens upon the protected First and Fourteenth Amendment interests of some individuals, both voters and potential candidates, in order to protect the interests of others. In the present case, the state stat-

ute is defended on the ground that it protects the integrity of the Party against the Party itself.

*Id.* at 224, 107 S.Ct. at 553–54.[7]

In *Eu,* certain California election laws prohibited the official governing bodies of political parties from endorsing candidates in party primaries, and dictated the internal organization of political parties. The Court invalidated the challenged laws because they burdened the first amendment rights of political parties and their members without serving a compelling state interest. *Eu,* 489 U.S. at 233, 109 S.Ct. at 1025. We find *Eu* inapplicable since it addresses *intra-political party* concerns and not the situation in the present case where a political organization's lack of any affiliation requirement for prospective candidates has a disorganizing effect on other political parties or organizations.

The appellants' reliance on *Tashjian* and *Eu* is misplaced in that they do not address the issue of whether the state may make distinctions between political organizations and political parties in maintaining the integrity of the political process of its ballot access system in order to promote the overall stability of the state's election process. *See Storer,* 415 U.S. at 733, 737, 94 S.Ct. at 1280, 1282; *see also Munro,* 479 U.S. 189, 107 S.Ct. 533. We conclude that Colorado's one-year unaffiliation requirement preserves the state's compelling interest in maintaining a fair election process, without unfairly or unnecessarily impinging upon Heid's and the CLP's associational rights.

B.

We now address the appellants' claim that section 1–4–801(1)(i), 1B C.R.S.

**7.** The Court also qualified its holding, stating that its decision

[did] not establish that state regulation of primary voting qualifications may never withstand challenge by a political party or its membership. A party seeking, for example, to open its primary to all voters, including members of other parties, would raise a different combination of considerations. Under such circumstances, the effect of one party's broadening of participation would threaten other parties with the disorganization effects which the statutes in *Storer v. Brown,* 415 U.S. 724 [94 S.Ct. 1274, 39 L.Ed.2d 714] (1974), and

(1980), imposes a twelve-month unaffiliation requirement on political organization candidates that is not imposed on candidates of the two major political parties, and that the statute is therefore an unconstitutional violation of the appellants' right to equal protection under the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution. In advancing an equal protection argument, "it is the claimant's burden to 'demonstrate in the first instance a discrimination against [him] of some substance.'" *Clements v. Fashing,* 457 U.S. 957, 967, 102 S.Ct. 2836, 2845, 73 L.Ed.2d 508 (1982) (quoting *American Party of Texas v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974)). Appellants have failed to carry this burden. We thus find their argument to be without merit.

The Colorado election code distinguishes political organizations from political parties. A political organization is defined as "any group of registered electors who, by petition for nomination of an independent candidate as provided in section 1–4–801, places upon the official general election ballot nominees for public office." § 1–1–104(17), 1B C.R.S. (1990 Supp.). Section 1–4–801(1)(i) provides in relevant part:

No person shall be placed in nomination by petition unless the person ... was registered as unaffiliated ... for at least twelve months prior to the date of filing of the petition.[8]

It is undisputed that the CLP qualifies as a political organization.

*Rosario v. Rockefeller,* 410 U.S. 752 [93 S.Ct. 1245, 36 L.Ed.2d 1] (1973), were designed to prevent.

*Tashjian,* 479 U.S. at 224–25 n. 13, 107 S.Ct. at 553–54 n. 13. Under this rationale, a state could restrict a person to becoming a candidate for only one political entity in an election year. Thus, it is not impermissible for Colorado to prevent Heid from presenting himself to the voters as a Libertarian–Republican candidate as he had apparently intended.

**8.** Under Rule 16, 8 C.C.R. 1505–1 (1984), the term "unaffiliated" in the statute means unaffiliated with a political party.

In contrast, a political party is defined by the election code to mean "any political organization which at the last preceding gubernatorial election was represented on the official ballot either by regular party candidates or by individual nominees only if it cast for its gubernatorial candidate at least ten percent of the total gubernatorial vote cast in the state at such election." § 1–1–104(18), 1B C.R.S. (1973). The election code does not require political parties to comply with section 1–4–801 in order to place nominees on general election ballots.

The election code allows a political organization to become a political party if it commands a modicum of support among the electorate. See § 1–4–801(1)(b), 1B C.R.S. (1990). A political party, similarly, can become a political organization if its popular support decreases. See National Prohibition Party v. State, 752 P.2d 80 (Colo.1988) ("Any political entity that fails to receive at least ten percent of the total vote cast in the preceding gubernatorial election is a 'political organization' subject to section 1–4–801(1).").[9] The code thus distinguishes political organizations from political parties, but does not, however, prevent organizations from becoming parties.

Political organizations and political parties are thus not similarly situated under the election code. Political organizations can be accorded dissimilar treatment from political parties, therefore, if they are not unfairly deprived of exercising their fundamental rights. See J. Nowak & R. Rotunda, Constitutional Law 568 (4th ed. 1991) ("[T]he Court has increasingly focused upon the concept of equal protection to guarantee that all individuals are accorded fair treatment in the exercise of fundamental rights...."). The permissibility of this dissimilar treatment is the basis for appellants' contention that section 1–4–801(1)(i)'s sole application to political organizations denies them equal protection of the laws

and discriminates against them in their exercise of a fundamental right.

This court has previously considered whether section 1–4–801(1) deprives political organizations of equal protection of the laws. National Prohibition Party, 752 P.2d at 83. Petitioners argued therein that section 1–4–801(1) "unconstitutionally discriminates against political organizations by requiring them to bear burdens that are not imposed on majority party candidates." Id. Specifically, petitioners challenged the requirement that "each candidate for public office who is either independent or affiliated with a political organization ... circulate and file a separate petition before his [or her] name can appear on the ballot." Id. at 81. We noted that "[t]he burdens placed on political organizations under section 1–4–801(1) are no more restrictive than those placed on candidates from political parties.... To require political organizations ... to comply with the elaborate requirements for a political party would inhibit such entities from placing candidates on the ballot." Id. at 85 (citing §§ 1–4–601 to –701). We found that Colorado's interests in preserving "the integrity of the electoral process by avoiding voter confusion, ballot overcrowding, and the presence of frivolous candidates" outweighed the burdens imposed on petitioners' constitutional rights. Id. We thus held that section 1–4–801(1) satisfied the requirements of equal protection of the laws. Id.

With respect to the one-year unaffiliation requirement, we have evaluated the burden that section 1–4–801(1)(i) imposes on appellants' constitutional rights, and concluded that the requirement outweighs the burden by preserving Colorado's interest in "maintaining the integrity" of its ballot access system. See part II.A. (citing Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)). Because the requirement serves compelling state interests, the

---

**9.** See Clements v. People ex rel. Lee, 58 Colo. 105, 109–10, 143 P. 834 (1914) ("it clearly appears that an association of qualified electors who, by petition, place upon the official ballot individual nominees for public office, constitute and are a 'political organization'; that as a condition precedent for such 'political organization' to be-

come a 'political party' within the meaning of the act, it shall participate in such election, and, in addition thereto, cast for its candidate for governor at least ten per cent of the total vote cast at such election.") (interpreting the similar precursors of today's election code).

election code's different treatment of political parties and organizations does not deprive appellants of equal protection of the laws. In fact, the dissimilar treatment may facilitate political organizations' access to ballots. *Id.*[10]

The election code's dissimilar treatment is thus permissible under the federal and state constitutions.

### III.

In conclusion, we hold that section 1–4–801(1)(i) is constitutional, and accordingly affirm the district court.

LOHR, J., specially concurs.

MULLARKEY, J., specially concurs.

QUINN, J., dissents.

Justice LOHR specially concurring:

I concur in the result reached by the majority but write separately to express the reasons for this agreement.

The rights at issue in this case are those of petitioners Colorado Libertarian Party (CLP) and Robin Heid to political association as guaranteed by the first and fourteenth amendments to the United States Constitution and article II, section 5, of the Colorado Constitution, and to equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution.

*Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1973), is dispositive of the arguments of CLP and Heid that the twelve month unaffiliation requirement in section 1–4–801(1)(i), 1B C.R.S. (1980), violates their rights to political association under the first and fourteenth amendments to the United States Constitution. In that case, independent candidates for public office sought a declaration that certain provisions of the California Elections Code violated their political association rights under the first and fourteenth amendments. The provisions in question denied a ballot posi-

tion to an independent candidate for elective public office who had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary election. In order to qualify for a position on the ballot, a person registered with a qualified political party had to disaffiliate seventeen months or more before the general election. The United States Supreme Court upheld California's disaffiliation requirement against a challenge grounded on the political association rights protected by the first and fourteenth amendments. The court concluded that the disaffiliation requirement furthers the state's interest in the stability of its political system, a compelling interest "outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." *Id.* at 736, 94 S.Ct. at 1282. *Storer* defeats the arguments of CLP and Heid that the one-year unaffiliation requirement in section 1–4–801(1)(i) violates their rights to political association under the federal constitution. Nothing in subsequent federal cases has called into question the basic holding of *Storer. See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 223, 107 S.Ct. 544, 553, 93 L.Ed.2d 514 (1986) (invalidating requirement that voters in any political primary be registered members of that party); *Eu v. San Francisco County Democratic Comm.*, 489 U.S. 214, 227, 109 S.Ct. 1013, 1022, 103 L.Ed.2d 271 (1989) (invalidating ban on party endorsement of primary candidates and regulations on internal party governance).

The majority opinion and the special concurrence of Justice Mullarkey adequately demonstrate that political organizations and political parties are not similarly situated for the purpose of the equal protection analysis under the federal constitution. Accordingly, I agree that CLP and Heid have not established that the unaffiliation requirement of section 1–4–801(1)(i) violates their rights to equal protection of the

---

10. Appellants' contention that they are discriminated against because political parties can author their own unaffiliation requirements thus fails as appellants are not unfairly burdened by section 1–4–801(1)(i) in their access to the ballot.

laws under the fourteenth amendment of the federal constitution.

Although CLP and Heid assert in their briefs that the unaffiliation requirement violates their rights to political association under article II, section 5, of the Colorado Constitution and their rights to equal protection of the laws under article II, section 25, of our state constitution, they do not attempt to distinguish those rights from the companion rights guaranteed by the federal constitution. Their arguments assume that the scope of the federal and state rights is identical.[1] As support for that proposition, the petitioners cite *MacGuire v. Houston*, 717 P.2d 948, 954–55 (Colo.1986), and *National Prohibition Party v. State*, 752 P.2d 80, 83 n. 4 (Colo. 1988).[2] *MacGuire*, however, does not support so broad a statement. There, we considered the narrow question of whether "the fundamental freedoms of association, political belief, and political participation" under the federal and state constitutions "require that unaffiliated voters or members of minority political parties be eligible to serve as election judges." *Id.* at 954–55. We held that the Colorado Constitution provided no greater protections than the federal constitution on this particular issue. *Id.* at 954–55. *MacGuire* provides the sole support for our statement in *National Prohibition Party v. State*, 752 P.2d at 83 n. 4 (1988), that "[i]n testing the validity of restrictions on ballot access under the Colorado Constitution, we apply the requirements of federal law." The language in *National Prohibition Party* states the holding of *MacGuire* on this issue much too broadly.

---

1. In fact, in their reply brief CLP and Heid argue that:

   [P]etitioners' rights to political association and equal protection under Article II, Sections 5 and 25 of the Colorado Constitution have also been violated; however, the analysis for those violations parallels the federal constitutional analysis.

   Petitioners' Reply Brief at 1 n. 1, 90SA382.

2. Petitioners' Opening Brief at 5 n. 3, 90SA382.

3. Article II, section 5, of the Colorado Constitution provides:

The language of article II, section 5, of the Colorado Constitution is very different from the terms of the right to political association as set forth in the first amendment to the United States Constitution.[3] In addition, as we observe in a decision announced today, we have a long tradition of providing greater protection of free speech under the Colorado Constitution than does the first amendment. *Bock v. Westminster Mall Co.*, No. 90SC433 —— P.2d —— (Colo.S.Ct. Oct. 8, 1991). The first amendment protects both free speech and the right to political association. Therefore, in a properly postured case I would not foreclose the possibility that the Colorado Constitution provides greater rights to political association than does the first amendment. In absence of any argument by counsel advancing or explicating such an argument, however, I do not consider the present case appropriate for consideration of that issue.

I concur in the judgment of the court.

Justice MULLARKEY specially concurring:

The Colorado Libertarian Party (CLP) and Robin Heid appeal the district court's ruling upholding the unaffiliation requirement of section 1–4–801(1)(i), 1B C.R.S. (1980), against constitutional attack under the First and Fourteenth Amendments to the United States Constitution and Article II, Section 5 of the Colorado Constitution. I agree with the court's result in this case, but specially concur because my analysis is different. There is no violation of appellants' right to equal protection of the laws because the CLP and the existing political parties are not similarly situated. Since

All elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

The first amendment to the United States Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

the dissimilar treatment occurs in the peculiar context of elections and access to the official ballot, it is unnecessary to engage in the extended analysis of the appellants' First Amendment claim found in part II–A of the majority opinion. *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), subsequently approved in *Munro v. Socialist Workers Party*, 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986), is dispositive.

### I.

I begin by placing the contested statute in its proper context. Section 1–4–801(1)(i) is found in Part 8 of the Colorado election code under the heading, "NOMINATION OF INDEPENDENT CANDIDATES," and provides in relevant part:

> No person shall be placed in nomination by petition unless the person ... was registered as unaffiliated ... for at least twelve months prior to the date of filing of the petition.

Under Rule 16, 8 C.C.R. 1505–1 (1984), the term "unaffiliated" in the statute means unaffiliated with a political party. Although the CLP calls itself a party, it is not a political party under the election code. The CLP is a political organization, while the only political entities currently qualifying as political parties in Colorado are the democratic and republican parties. Heid, who was a registered republican within the twelve month period, was denied access to the ballot by the secretary of state even though he was the CLP nominee.

A political organization is defined by statute to mean "any group of registered electors who, by petition for nomination of an independent candidate as provided in section 1–4–801, places upon the official general election ballot nominees for public office." § 1–1–104(17), 1B C.R.S. (1990 Supp.). In contrast, a political party is defined to mean "any political organization which at the last preceding gubernatorial election was represented on the official ballot either by regular party candidates or by individual nominees only if it cast for its gubernatorial candidate at least ten percent of the total gubernatorial vote cast in the

state at such election." § 1–1–104(18), 1B C.R.S. (1973). Thus, a political party is a political organization, but a political organization is not necessarily a political party.

The statutory scheme, however, allows a political organization to *become* a political party if that organization manifests a low minimum of support among the electorate. Under section 1–4–801(1)(b), 1B C.R.S. (1990), a political organization can field an independent candidate, for governor for example, by a petition signed by 1,000 registered electors statewide. Having secured that number of signatures or more, the independent candidate's political organization would qualify as a political party for the next election if that candidate garnered at least ten percent of the votes cast for governor. "Any political entity that fails to receive at least ten percent of the total vote cast in the preceding gubernatorial election is a 'political organization' subject to section 1–4–801(1)." *National Prohibition Party v. State*, 752 P.2d 80, 83 (Colo. 1988). *See Clements v. People ex rel. Lee*, 58 Colo. 105, 109–10, 143 P. 834, 835 (1914).

The election code, therefore, enacts a structured yet fluid method for access to the general ballot. A distinction is made between political organizations and political parties, but that distinction does not prevent organizations from becoming parties. Indeed, political parties also could return to being political organizations should their fortunes wane. The election code does not maintain a static political picture; rather, it maintains a "revolving door" through which minority ideologies can enter the mainstream.

These points are important for the analysis of CLP's equal protection challenge. Because political organizations and political parties are not similarly situated, political organizations and their prospective candidates can be accorded dissimilar treatment and, in fact, they are accorded different treatment under the election code. The two entities are treated differently because, under the statutes, political parties can override the twelve-month affiliation period by internal party rule, while political organizations enjoy no similar license to

override the twelve-month unaffiliation period by internal organization rule.

This disparate treatment, however, withstands the equal protection challenge because parties and organizations are not similarly situated, as I will show. That parties and organizations are not similarly situated in turn addresses the associational rights challenge under the First Amendment.

## II.

Contrary to appellants' argument, this case does involve the statutory requirements designed to ensure sound access to the ballot, and not just the right of a political organization to select the candidate of its choice. The issue as to whether it is permissible for the state to make the distinction between political organizations and political parties is at the heart of this case since that distinction is the essential mechanism by which the state regulates the electoral process and restricts access to the ballot. In *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974), the Court acknowledged that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." More recently, in *Munro v. Socialist Workers Party*, the Court held that although restrictions upon ballot access "impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively," these rights of association "are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively." 479 U.S. 189, 193, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986) (citing *Storer*).

Acknowledging the element of a *necessary* restriction of associational rights is crucial. It means that certain practical regulations of the electoral process, including restrictions on access to the ballot, can

be accomplished only by qualifying or impinging on the right of association.[1] The requirement of having to demonstrate a modicum of public support before being allowed access to the ballot, for example, is at once a constitutionally valid restriction on the ballot *and* a permissible restriction or qualification of the right of association.

Addressing the validity of the distinction between political organizations and political parties is therefore necessary for any response to appellants' allegation that the election code violates their associational rights under the First Amendment. The election code is again the point of departure, for it is there that the difference between organizations and parties is explicitly established. By their terms, the statutes set out the difference. A political organization is not a political party if or because its candidate has not received ten percent of the total gubernatorial vote in the preceding election. Consequently, a political organization must petition for access to the ballot with a certain number of qualified signatures, while its candidate must have been unaffiliated for twelve months prior to filing the petition. §§ 1–4–801(1)(b) and (i), 1B C.R.S. (1973 & 1990 Supp.).

This court has already decided that the state has a "substantial interest" in assuring that candidates demonstrate significant support precedent to their placement on the ballot. *National Prohibition Party*, 752 P.2d at 85. Moreover, the United States Supreme Court has made it "clear that States may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Munro*, 479 U.S. at 193, 107 S.Ct. at 536. The signature and unaffiliation requirements both serve the state's substantial interest in conditioning access to the ballot upon a showing of support. The state's "interest, if no other, [is] in avoiding confusion, deception, and even frustration of the democratic process

---

**1.** This relationship does not hold of course for other fundamental rights, such as free speech. *See Eu v. San Francisco County Democratic*

*Comm.*, 489 U.S. 214, 222–23, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989).

at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971).

Appellants concede that gathering 1,000 qualified signatures is no problem for the CLP and/or Heid. Indeed, appellants state that the actual number of signatures required is completely irrelevant. The relative burden of petition signatures is therefore not at issue here. I turn then to the unaffiliation requirement. In *Munro*, the Court reaffirmed *Storer*, which

> upheld California's statutory provisions that denied ballot access to an independent candidate if the candidate had been affiliated with any political party within one year prior to the immediately preceding primary election. [The Court] recognized that California had a "compelling" interest in maintaining the integrity of its political processes, and that the disaffiliation requirement furthered this interest and was therefore valid, even though it was an absolute bar to attaining a ballot position.

*Munro*, 479 U.S. at 195, 107 S.Ct. at 537.[2] In fact, under Colorado law there is no absolute bar to Heid's future CLP candidacy. Heid merely has to gather the requisite number of qualified signatures and remember to register to vote as anything but a republican or democrat (*i.e.*, unaffiliated). This calls for nothing more than a "reasonably diligent independent candidate." *Storer*, 415 U.S. at 742, 94 S.Ct. at 1285.

Furthermore, the *Munro* Court held that a state does not shoulder "the burden of demonstrating empirically the objective effects on political stability that were produced by the 1-year disaffiliation requirement." 479 U.S. at 195, 107 S.Ct. at 537. Neither is the state required to "prove actual voter confusion, ballot overcrowding, or the presence of frivolous candidacies as a predicate to the imposition of reasonable ballot access restrictions." *Id.* Thus, ap-

pellants' arguments that the secretary of state has failed to demonstrate the possibility of disarray and confusion are futile.

I again emphasize that the code affords ample opportunity both for political organizations to reach the status of political parties and for existing political parties to exit the political stage. The burden on the right of association, therefore, is not fixed, but may be shed or assumed depending on electoral success or failure. The danger of political monopoly by the major parties is thus avoided under Colorado's election code. *Storer*, 415 U.S. at 729, 94 S.Ct. at 1278. That the two existing major parties have lately monopolized political life in Colorado may perhaps be due to their ability to adapt to the changing attitudes of their partisans and/or to adopt the promising platforms of rising political organizations. I note that here, Heid himself, by his dual candidacy, aspired to meld CLP ideology with that of the republican party. Thus, the election code's "revolving door" is the means by which the state provides a feasible means of access to the general election ballot, pursuant to constitutional mandate. *Storer*, 415 U.S. at 728, 94 S.Ct. at 1278.

The election code's different treatment of parties and organizations is permissible under the federal and state constitutions. Hence, I agree that the trial court's judgment should be affirmed.

Justice QUINN dissenting:

The predominant constitutional interest at stake in this case is not the interest of Robin Heid in obtaining access to the ballot. Although Heid's interest in ballot access is not without significance, it clearly is secondary to the far more important associational interests of the members of the Colorado Libertarian Party in designating and selecting their candidate for a statewide office in accordance with the party's own rules of governance. The majority,

---

**2.** *Storer* thus retains its vigor, even after *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). In fact, the *Celebrezze* opinion, which invalidated Ohio's early filing deadlines for independent candidates, noted that a disaffiliation requirement is substan-

tially different from an early filing requirement. 460 U.S. at 804, 103 S.Ct. at 1578. *Storer* also was reaffirmed in *Eu v. San Francisco County Democratic Comm.*, 489 U.S. at 231, 109 S.Ct. at 1024.

emphasizing the need to maintain the integrity of Colorado's ballot access system and to promote the stability of the state's election process, maj. op. at 1004, unduly depreciates the constitutionally protected right of an organized political association to designate its nominee for elective office pursuant to internal party standards. Because I cannot square the majority's resolution of this case with the elevated status due to the associational interests of members belonging to a bona fide political organization, I dissent.

## I.

The facts are undisputed. On April 21, 1990, the Colorado Libertarian Party, in convention, nominated Robin Heid, who was a member of the party, as its candidate for Governor of Colorado. Under the Libertarian Party's constitution and bylaws, a person can become a member either by registering as a Libertarian voter or by paying dues. Heid became a member of the Libertarian Party by paying dues, and he also was a registered member of the Republican Party.

Following his nomination for Governor, Heid submitted a petition to the Secretary of State for placement of his name on the November 1990 ballot. When Heid filed his petition, the Colorado Libertarian Party satisfied the criteria for a "qualified political organization" pursuant to rules promulgated by the Secretary of State. *See* rules 16–1 to 16–9, 8 C.C.R. 1505–1 (1984). Rule 16.1 defines a qualified political organization as "one which has placed on the ballot at a congressional vacancy or general election a candidate for district or state office and whose officers have filed under oath with the Secretary of State the required proof of organization and which continues to meet the requirements of 16.3 and 16.4." The required proof of organization, as defined by Rule 16.2, must include the bylaws of the political organization, its method for selecting officers and delegates to political conventions, and its method of "selecting

candidates planning to petition onto the state's general election ballot," as well as "the names, addresses, and telephone numbers of the officers or committee members of the organization." Rule 16.3 requires a qualified political association to meet once a year, and Rule 16.4 requires the organization to place a candidate or candidates on the general election ballot every two years. The rules promulgated by the Secretary of State also include procedures for voter registration that permit an individual to register in a manner that reflects the voter's affiliation with a qualified political organization. *See* Rule 16.5, 8 C.C.R. 1505–1 (1984). Rule 16.6 requires candidates "wishing to represent a qualified political organization on the general ballot to be placed in nomination by independent nominating petition pursuant to C.R.S. 1–4–801."

Heid's petition contained the requisite number of voter signatures for nomination of an independent candidate by petition. *See* § 1–4–801(1)(b), 1B C.R.S. (1990 Supp.) (petition for office of governor must contain signatures of 1,000 or more registered electors). In the case of an independent candidate seeking access to the ballot by petition, section 1–4–801(1)(i), 1B C.R.S. (1980), states that "[n]o person shall be placed in nomination by petition unless the person ... was registered as unaffiliated, as shown on the books of the county clerk and recorder, for at least twelve months prior to the date of filing of the petition." In contrast to the unaffiliation requirement applicable to the candidates of a qualified political organization, Colorado's statutory scheme provides that in the case of candidates of a major political party,[1] the major party's certificate or designation of candidates shall certify that the candidate for a particular office "has been a member of said political party for the period of time required by rule of the candidate's political party or by law if the party has no such rule." § 1–4–601(2), 1B C.R.S. (1990 Supp.).

---

**1.** A major political party is defined as any political organization which cast for its candidate for governor at least ten percent of the total votes

cast at the last preceding gubernatorial election, § 1–1–104(18), 1B C.R.S. (1980).

The Secretary of State rejected Heid's petition because he had not complied with the one year statutory unaffiliation requirement of section 1–4–801(1)(i). After the Secretary of State rejected the petition, the Colorado Libertarian Party and Heid filed a petition in the Denver District Court seeking injunctive and declaratory relief on the basis that the unaffiliation requirement of section 1–4–801(1)(i) violated their constitutional rights to freedom of association and to equal protection of the law under the United States and Colorado constitutions. The district court determined that the statute was constitutional and denied injunctive relief. This appeal followed.

## II.

Partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments to the United States Constitution. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986); *Anderson v. Celebrezze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983). This same associational interest is protected by various provisions of the Colorado constitution. Colo. Const. art. II, § 5 (right to free and open elections and prohibition against interference with free exercise of right of suffrage); art. II, § 10 (freedom of speech); art. II, § 24 (right to peaceably assemble and petition government for redress of grievances); art. II, § 25 (protection against deprivation of liberty without due process of law). "Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association." *Eu*, 489 U.S. at 224, 109 S.Ct. at 1021. This constitutionally protected associational interest applies not only to major political parties but also to minor political organizations which espouse a particular political ideology. *Id.* at 219, 109 S.Ct. at 1018.[2]

Because the right of a political organization's nominee to ballot access is intertwined with the associational interests of the organization's members, the legal standard for determining the validity of state restrictions on ballot access is not susceptible of mechanical application. Indeed, the determination is one in which few answers are written in black and white. Rather, the grays are dominant, and the shades are many.

### A.

One line of cases, as noted by the majority, emphasizes the state's interest in ensuring political stability by imposing restrictions on minor political candidates seeking access to the ballot in a general election. For example, in *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Supreme Court considered a California statutory scheme which required an independent candidate to file nomination papers signed by voters not less than five percent in number of the entire vote cast in the preceding general election in the area for which the candidate seeks to run, and which also prohibited ballot access to an independent candidate if the candidate had a registered affiliation with a qualified political party within one year immediately preceding the primary election. The Court upheld the five-percent petition requirement on the basis that the independent candidacy route was "but a part of the candidate-nominating process, an alternative to being nominated in one of the direct party primaries." *Id.* at 733, 94 S.Ct. at 1280. Addressing the statutory unaffiliation requirement, the Court concluded that it was "expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot," and that the state's interest in the stability of its political system was compelling and outweighed the interest which "the candidate and his

**2.** The plaintiffs in *Eu* were various county central committees of the Democratic and Republican Parties, the state central committee of the Libertarian Party, members of various state and county central committees, and other groups and individuals active in partisan politics in California. 489 U.S. at 219, 109 S.Ct. at 1018.

supporters may have in making a late rather than an early decision to seek independent ballot status." *Id.* at 733, 736, 94 S.Ct. at 1280, 1282. It should be pointed out that *Storer*, in emphasizing the state's interest in preserving political stability, gave but scant consideration to the associational interests of the independent candidate's supporters and, in that respect, seems to be in considerable tension with other decisions of the Court.

Subsequent to *Storer*, the Supreme Court decided *Munro v. Socialist Workers Party*, 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986), in which the Court upheld a Washington statutory requirement that a minor-party candidate for partisan statewide office receive at least one percent of all votes cast for that office in the state's primary election as a condition for placement of the candidate's name on the general election ballot. Because the Socialist Workers Party's candidate for United States Senator received less than one percent of the total votes cast for the office of United States Senator in the state's primary election, the candidate's name was not placed on the general election ballot. The Supreme Court analyzed the Washington statute in light of the following two basic principles: first, that "[r]estrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively," 479 U.S. at 193, 107 S.Ct. at 536; and second, that states "may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Id.* Assessing the impact of the Washington statute on the associational interests of the minor-party candidate's supporters, the Court concluded that the statute was "more accommodating of First Amendment rights and values" than was the statute in *Storer:*

Here ... Washington virtually guarantees what the parties challenging the ... California election laws so vigorously sought—candidate access to a statewide ballot. This is a significant difference. Washington has chosen a vehicle by which minor-party candidates must demonstrate voter support that serves to promote the very First Amendment values that are threatened by overly burdensome ballot access restrictions. It can hardly be said that Washington's voters are denied freedom of association because they must channel their expressive activity into a campaign at the primary as opposed to the general election. It is true that voters must make choices as they vote at the primary, but there are no state-imposed obstacles impairing voters in the exercise of their choices. Washington simply has not substantially burdened the "availability of political opportunity."

479 U.S. at 199, 107 S.Ct. at 539 (citation omitted).

In the instant case, neither Heid nor the Colorado Libertarian Party challenge Colorado's right to require a candidate to demonstrate a modicum of support among potential voters in order to qualify for a place on the ballot in the general election. Indeed, it is undisputed that the Secretary of State denied Heid a place on the ballot not because he failed to demonstrate the requisite amount of voter support, but because he was not registered as unaffiliated for at least twelve months prior to the filing of the petition. Under these circumstances, *Storer* and *Munro* are meager authority for resolving the associational interests at issue here.[3]

## B.

Given the fact that the only basis for the Secretary of State's denial of ballot access to Heid was the unaffiliation requirement, the controlling authority for this case can

---

**3.** In a fashion similar to *Storer*, the federal district court's opinion in *Thournir v. Meyer*, 708 F.Supp. 1183 (D.Colo.1989), *aff'd on other grounds*, 909 F.2d 408 (10th Cir.1990), focuses exclusively on the state's interest in regulating

ballot access of the independent candidate and does not address the associational interests of the candidate's supporters. I therefore find the majority's reliance on *Thournir* as equally misplaced as its reliance on *Storer.*

be found in that line of cases which assess the validity of restrictions on minor-party candidates and political organizations by analyzing the effect of the restrictions on the associational interests of the candidate's or organization's supporters. The Supreme Court's decisions in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986); and *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), are representative of this analytical tack. Analysis of the effects of statutory restrictions on the associational interests of a minor-candidate's supporters or a political organization's members is appropriate, in my view, because an election campaign is an effective platform for the expression of views on the issues of the day and a political organization's candidate serves as the standard bearer and a rallying point for persons joined together by reason of a similar political ideology.

In *Anderson,* 460 U.S. 780, 103 S.Ct. 1564, the Supreme Court considered whether an Ohio statutory restriction on ballot access for an independent candidate burdened the associational interests of the candidate and his supporters. The statute in question required the independent candidate to file a statement of candidacy and a nominating petition in March in order to appear on the general ballot in November. The March filing date preceded the date at which major political parties were required to name their candidates. In invalidating the Ohio statute, the Court stated:

> Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions.... Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.... The results of this evaluation will not be automatic; as we have recognized, there is "no substitute for the hard judgments that must be made."

460 U.S. at 789–90, 103 S.Ct. at 1570 (citations and footnotes omitted). Application of this standard led the Court to conclude that the early filing date did not sufficiently advance the interests put forth by the state to justify such a significant restriction on the voters' freedom of association.

Subsequent to *Anderson,* the Court more fully developed the associational component of state restrictions on the governance of political organizations in *Tashjian,* 479 U.S. 208, 107 S.Ct. 544, and *Eu,* 489 U.S. 214, 109 S.Ct. 1013. Both cases concerned the associational rights of political organizations and attempted to delineate the extent to which a state may interfere with the internal structure of the organization or with an activity integral to the association's political goals. In *Tashjian,* the Court struck down a state statute which had the effect of overriding a Republican Party rule that permitted independent voters to vote in Republican primaries. In describing the burden placed on the Republican Party by the statute, the Court stated:

> The statute here places limits upon the group of registered voters whom the Party may invite to participate in the "basic function" of selecting the Party's candidates. The State thus limits the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community.

479 U.S. at 215–16, 107 S.Ct. at 549. The Court further observed that if the state were "to provide that only Party members might be selected as the Party's chosen nominees for public office, such a prohibition of potential association with nonmembers would clearly infringe upon the rights of the Party's members under the First Amendment to organize with like-minded citizens in support of common political goals." *Id.* at 215, 107 S.Ct. at 549. *Tashjian* stands for the principle that a state may enact laws "to prevent the disruption ... of political parties from without, and not, as in this case, to prevent the parties from taking internal steps affecting their own process for the selection of candidates." 479 U.S. at 224, 107 S.Ct. at 553.

Subsequent to *Tashjian*, the Court in *Eu*, 489 U.S. 214, 109 S.Ct. 1013, invalidated California statutes that prohibited the official governing bodies of political parties from endorsing candidates in party primaries and that prescribed regulations for the internal organization of political parties. Reiterating the principle that a state statute that burdens the rights of political parties and their members can survive constitutional scrutiny "only if the State shows that it advances a compelling state interest ... and is narrowly tailored to serve that interest," *id.* at 222, the Court outlined the scope of the associational interests of political organizations as follows:

> Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, ... but also that a political party has a right to " 'identify the people who constitute the association,' " ... and to select a "standard bearer who best represents the party's ideologies and preferences. . . ."

> Depriving a political party of the power to endorse suffocates this right. The endorsement ban prevents parties from promoting candidates "at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community". . . . Even though individual members of the state central committees and county central committees

are free to issue endorsements, imposing limitations "on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association."

489 U.S. at 224–25, 109 S.Ct. at 1021 (citations omitted).

Because the unaffiliation requirement utilized by the Secretary of State to deny ballot access to Heid directly implicated the associational interests of members of the Colorado Libertarian Party, I believe that the principles enunciated in *Anderson*, *Tashjian*, and *Eu* provide the analytical framework for resolving this case.

### III.

The majority acknowledges that the one year unaffiliation requirement imposes a significant burden on the constitutionally protected associational interests of members of the Colorado Libertarian Party. Maj. op. at 1002. With that observation I certainly agree. The majority further identifies the governmental interests underlying the one year unaffiliation requirement as "the state's compelling interest in 'maintaining the integrity' of its ballot access system" and promoting the overall stability of the state's election process. Maj. op. at 1004. I have no disagreement with the compelling nature of these interests. Where I part company with the majority is in its assessment of the primacy of these interests over the constitutionally protected associational interests of members of the Colorado Libertarian Party and in the majority's apparent assumption that the one-year unaffiliation requirement is narrowly tailored to effectuate the identified state interests.

The majority concludes that the one year unaffiliation requirement "does not exclude CLP candidates from the ballot," but merely discourages political candidates prompted by short range political goals and prevents the practice of "diverting votes that might go to another political party or organization." Maj. op. at 1004–1005. The underlying assumption of the majority's analysis seems to be that so long as a

political organization is afforded the opportunity to place some candidates on the ballot, its associational interests are adequately protected. This analysis, in my view, misses the significance of the nature of a political organization's associational interests. Freedom of association for the members of a political organization means the right of the organization to select as its own standard bearer that person who will best represent the organization's ideologies and preferences. *Eu*, 489 U.S. at 224, 109 S.Ct. at 1021.

I have no quarrel with the majority's suggestion that the state has a valid interest in seeking to curtail the practice of "raiding." *See* maj. op. at 1004. "Raiding" occurs when "voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary." *Tashjian*, 479 U.S. at 219, 107 S.Ct. at 551 (quoting *Rosario v. Rockefeller*, 410 U.S. 752, 760, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973)). Party raiding, however, while a legitimate concern in party primaries, is not implicated in a general election where voters can vote for whichever candidate they desire. *Anderson*, 460 U.S. at 801–02 n. 29, 103 S.Ct. at 1577 n. 29.

Although the interests identified by the majority—namely, maintaining the integrity of the ballot access system and promoting the overall stability of the state's election process, maj. op. at 1004—may properly be characterized as compelling. I am at a loss to understand how the one year unaffiliation requirement is narrowly tailored to effectuate those interests or why less burdensome restrictions could not further those same interests. Since Heid is legitimately a member of the Libertarian Party, there is no risk of voter confusion in placing his name on the ballot. As the Supreme Court observed in *Anderson,* individual voters are well able to inform themselves about campaign issues and candidates. 460 U.S. at 797, 103 S.Ct. at 1574.

The integrity of the ballot access system can certainly be protected by alternative measures less drastic than preventing a political organization from designating its own standard bearer in accordance with its own rules of governance. Preventing a defeated primary candidate from running as the candidate of another party in the general election or prohibiting a candidate from running on more than one ticket would certainly serve the state interests identified by the majority. Moreover, if the state's interests in maintaining the integrity of the ballot access system and promoting the stability of the election process are not jeopardized by the statutory requirement that a major political party's candidate need only satisfy the party's membership rule in order to qualify for ballot access, § 1–4–601(2), 1B C.R.S. (1990 Supp.), I fail to see how the state can justify the one-year unaffiliation requirement for the nominee of a bona fide political organization when the nominee, as here, fully satisfies the membership requirements of the organization. Clearly, a much shorter period of unaffiliation would adequately serve the state's interests and at the same time would effectively accommodate the associational interests of the members of a recognized political organization.

I would reverse the judgment of the district court and declare the one year unaffiliation requirement violative of the constitutional right to freedom of political association guaranteed to members of the Colorado Libertarian Party by the United States and Colorado Constitutions.