FILED
United States Court of Appeals
Tenth Circuit

January 29, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

COALITION FOR EQUAL RIGHTS,
INC., a Colorado corporation; SHARI
WARREN, doing business as Spirit
Keeper,

     Plaintiffs-Appellants,

v.

BILL RITTER, JR., Governor, State of
Colorado; JOHN SUTHERS, Colorado
Attorney General; DONALD MARES,
Executive Director, Colorado Department
of Labor and Employment, PETER
WEIR, Executive Director, Colorado
Department of Public Safety, JAMES
MARTIN, Executive Director, Colorado
Department of Public Health and
Environment, CARY KENNEDY,
Colorado State Treasurer, all in their
official capacities; SCOTT WILLIAM
STOREY, in his official capacity as
District Attorney, First Judicial District;
MICHAEL RICHARD MORRISSEY, in
his official capacity as District Attorney,
Second Judicial District; LEE ALLEN
HAWKE, in his official capacity as
District Attorney, Third Judicial District;
JOHN R. NEWSOME, in his official
capacity as District Attorney, Fourth
Judicial District; MARK D. HURLBERT,
in his official capacity as District
Attorney, Fifth Judicial District; CRAIG
STEPHEN WESTBERG, in his official
capacity as District Attorney, Sixth
Judicial District; MYRL SERRA, in his

No. 06-1511

official capacity as District Attorney, Seventh Judicial District; LARRY R. ABRAHAMSON, in his official capacity as District Attorney, Eighth Judicial District; MARTIN BEESON, in his official capacity as District Attorney, Ninth Judicial District; WILLIAM THIEBAUT, JR., in his official capacity as District Attorney, Tenth Judicial District; MOLLY K. CHILSON, in her official capacity as District Attorney, Eleventh Judicial District; PETER L. COMAR, in his official capacity as District Attorney, Twelfth Judicial District; ROBERT E. WATSON, in his official capacity as District Attorney, Thirteenth Judicial District; BONNIE S. ROESINK, in her official capacity as District Attorney, Fourteenth Judicial District; MICHAEL JOHN DAVIDSON, in his official capacity as District Attorney, Fifteenth Judicial District; RODNEY DANN FOURACRE, in his official capacity as District Attorney, Sixteenth Judicial District; DONALD SPENCE QUICK, in his official capacity as District Attorney, Seventeenth Judicial District; CAROL A. CHAMBERS, in her official capacity as District Attorney, Eighteenth Judicial District; KENNETH R. BUCK, in his official capacity as District Attorney, Nineteenth Judicial District; MARY T. LACY, in her official capacity as District Attorney, Twentieth Judicial District; PETER G. HAUZINER, in his official capacity as District Attorney, Twenty-First Judicial District; JAMES W. WILSON, in his official capacity as District Attorney, Twenty-Second Judicial District; and THE STATE OF COLORADO,

2

Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 06-cv-1145-LTB-PAC)**

---

Joel M. Specter (Joseph F. Becker and William Perry Pendley on the briefs), Mountain States Legal Foundation, Lakewood, Colorado, for Plaintiffs-Appellants.

Jason R. Dunn, Colorado Deputy Attorney General, Denver, Colorado [attorney for State Defendants] (Henry Richard Reeve, Deputy District Attorney, Second Judicial District, Denver, Colorado, [attorney for District Attorneys except William Thiebaut, Jr.], with him on the brief), for Defendant-Appellees.

---

Before **BRISCOE, EBEL** and **MURPHY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiffs Coalition for Equal Rights, Inc. (Coalition) and Shari Warren, d/b/a Spirit Keeper, appeal from the district court's grant of summary judgment in favor of the Governor of the State of Colorado and other Colorado state officials on plaintiffs' claims challenging the constitutionality of Colorado's Clean Indoor Air Act. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

*The Colorado Clean Indoor Air Act*

On March 27, 2006, the Colorado legislature enacted, and then-Governor Bill

Owens signed into law, the Colorado Clean Indoor Air Act (CCIA), Colo. Rev. Stat. § 25-14-201, et seq. By its own terms, the CCIA became effective on July 1, 2006.

The Colorado legislature offered the following rationale for enacting the CCIA:

> The general assembly hereby finds and determines that it is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to environmental tobacco smoke in most indoor areas open to the public, public meetings, food service establishments, and places of employment. The general assembly further finds and determines that a balance should be struck between the health concerns of nonconsumers of tobacco products and the need to minimize unwarranted governmental intrusion into, and regulation of, private spheres of conduct and choice with respect to the use or nonuse of tobacco products in certain designated public areas and in private places. Therefore, the general assembly hereby declares that the purpose of [the CCIA] is to preserve and improve the health, comfort, and environment of the people of this state by limiting exposure to tobacco smoke.

Colo. Rev. Stat. § 25-14-202 ("Legislative declaration").

Consistent with this legislative declaration, the CCIA provides that, "in order to reduce the levels of exposure to environmental tobacco smoke, smoking shall not be permitted and no person shall smoke in any indoor area . . . ." Colo. Rev. Stat. § 25-14-204(1). The CCIA expressly exempts from this general prohibition a variety of indoor areas including, of relevance here, "airport smoking concession[s]," id. § 25-11-205(1)(f), which it defines as

> a bar or restaurant, or both, in a public airport with regularly scheduled domestic and international commercial passenger flights, in which bar or restaurant smoking is allowed in a fully enclosed and independently ventilated area by the terms of the concession.

Id. § 25-14-203(1).

4

In addition to its general prohibition on smoking in indoor areas, the CCIA also makes it unlawful for (1) "a person who owns, manages, operates, or otherwise controls the use of" any indoor premises subject to the CCIA "to violate any provision" of the CCIA, and (2) "a person to smoke in an area where smoking is prohibited" by the CCIA. Colo. Rev. Stat. § 25-14-208(1), (2). Violations of these provisions are considered "class 2 petty offense[s]" under Colorado law and are penalized with escalating fines (from $200 to $500). Id. § (3).

*The district court proceedings*

The Coalition is a nonprofit Colorado corporation that represents the interests of its more than five hundred members, who include independent bar and tavern owners, bowling alleys, billiard halls, bingo parlors, military service clubs, restaurants, liquor stores, fraternal orders, trade associations, professional air cleaners, amusement device retailers, and individual citizens. Shari Warren is a Colorado citizen who owns and operates the Spirit Keeper, a tavern located in Black Forest, Colorado, that is licensed to serve alcoholic beverages.

On June 15, 2006, plaintiffs Coalition and Warren filed this action against the Governor of the State of Colorado and other Colorado state officials challenging the constitutionality of the CCIA. In pertinent part, plaintiffs alleged that the CCIA violated their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and their right to equal protection implicit in the Due Process Clause of the Colorado Constitution because it prohibited indoor smoking in the establishments

5

owned, operated and/or serviced by plaintiffs, yet granted an exemption from the prohibition to airport smoking concessions.[1] The parties subsequently filed cross motions for summary judgment, and, on October 19, 2006, the district court issued an order denying plaintiffs' motion for summary judgment, granting defendants' motion for summary judgment, and dismissing the action.

## II.

In their appeal, plaintiffs challenge the district court's grant of summary judgment on their equal protection claims.[2] We review de novo the district court's grant of

---

[1] Plaintiffs' equal protection claims also cited the then-existing CCIA exemption for licensed casinos. Because that exemption has since been eliminated by the Colorado legislature, those portions of plaintiffs' claims have been rendered moot. E.g., U. S. Dep't of Treasury v. Galioto, 477 U.S. 556, 559-60 (1986) (concluding that equal protection challenge to federal firearms statute treating certain felons more favorably than former mental patients was moot after Congress amended statute to eliminate discrimination).

[2] In the "Summary of Argument" section of their opening appellate brief, plaintiffs state that enforcement of the CCIA has resulted in violations of "the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and equal protection implicit in Article II, § 25, of the Colorado Constitution, that is, its due process provision, and violation of the 'special legislation' clause of Article V, § 25 of the Colorado Constitution." Aplt. Br. at 13. In the remainder of their brief, however, plaintiffs focus almost exclusively on their equal protection claims. Indeed, the only reference in the remainder of their brief to any other claim is the two-sentence concluding paragraph that suggests, in passing, that the CCIA runs afoul of Article V, § 21 of the Colorado Constitution, which mandates that bills contain only one subject as expressed in the title of the legislation. To the extent plaintiffs intended to appeal the district court's grant of summary judgment on issues other than their equal protection claims, we summarily affirm the district court's ruling.

6

summary judgment.  <u>Hoffmann-Pugh v. Keenan</u>, 338 F.3d 1136, 1138 (10th Cir. 2003).

Likewise, we review de novo challenges to the constitutionality of a statute.  <u>Id.</u> at 1138-39.

The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o

State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1.  "This provision creates no substantive rights," and instead

"embodies a general rule that States must treat like cases alike but may treat unlike cases

accordingly."  <u>Vacco v. Quill</u>, 521 U.S. 793, 799 (1997).  In other words, "[t]he Equal

Protection Clause does not forbid classifications.  It simply keeps governmental

decisionmakers from treating differently persons who are in all relevant respects alike."[3]

<u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992).

Unless a statute being challenged on equal protection grounds "jeopardizes

exercise of a fundamental right or categorizes on the basis of an inherently suspect

characteristic," <u>id.</u>, it will be "presumed to be valid and will be sustained if the

classification drawn by the statute is rationally related to a legitimate state interest," <u>City</u>

<u>of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 440 (1985).  Moreover, the Supreme

Court, by its own admission, "allows the States wide latitude" "[w]hen social or

economic legislation is at issue," <u>id.</u>, and "ha[s] been most likely to apply rational basis

review to hold a law unconstitutional under the Equal Protection Clause where . . . the

---

[3] As noted by defendants, equal protection analysis under the Colorado Constitution appears to be identical to equal protection analysis under the United States Constitution.  <u>E.g.</u>, <u>People v. McKnight</u>, 617 P.2d 1178, 1185-86 (Colo. 1980).  Thus, our analysis of plaintiffs' claim under the Equal Protection Clause of the United States Constitution controls their similar claim under the Colorado Constitution.

challenged legislation inhibits personal relationships," <u>Lawrence v. Texas</u>, 539 U.S. 558, 580 (2003), (O'Connor, J., concurring).

In light of these principles, it is beyond dispute that the State of Colorado must be afforded wide latitude in its decision to distinguish between the establishments owned, operated, and/or serviced by plaintiffs and the airport smoking concessions that are currently exempted from the CCIA. The CCIA involves social legislation, does not jeopardize the exercise of any fundamental rights, and in no way categorizes on the basis of inherently suspect characteristics. <u>See</u> <u>Castaways Backwater Café, Inc. v. Fla. Dep't of Bus. & Prof'l Regulations Div.</u>, 214 F. App'x. 955, 956 (11th Cir. 2007) (reaching same conclusion with respect to Florida Clean Indoor Air Act).

The district court concluded, and we agree, that the State of Colorado has offered a rational basis for its distinction between airport smoking concessions and the establishments owned, operated, and/or serviced by plaintiffs. To begin with, the State notes that all qualifying airport smoking concessions under the CCIA are located within the Denver International Airport (DIA) because it is the only airport within the State of Colorado that offers regularly scheduled domestic and international commercial passenger flights. In turn, the State notes that, in contrast to the patrons of plaintiffs' establishments, "the vast majority of DIA visitors are nonresidents of Colorado, in the state for only a few minutes or hours while waiting for a connecting flight." Aple. Br. at 12. Further, the State notes, those DIA visitors who are smokers would, without the availability of airport smoking concessions, "have no options as to where they can

8

smoke," id. at 7, because they "have no real opportunity or ability to travel to a location outside the DIA area," id. at 21.  This obviously contrasts with most, if not all, of the patrons of plaintiffs' establishments, who, even with the enactment of the CCIA, have various options as to where they can smoke.  Lastly, the State notes that the smoking lounges at DIA, in contrast to plaintiffs' establishments, "are owned and operated by the City and County of Denver, a home rule city and county that has independent authority to take action to protect the public from secondhand smoke in city-owned facilities, which it has done."  Id. at 12-13 (citing Denver Municipal Code § 24-301, et seq. (2006)).

In their appeal, plaintiffs do not seriously dispute any of these bases for distinction. Instead, they contend the district court "erred by applying a toothless and, in fact, erroneous rational basis test" in analyzing and rejecting their equal protection claims. Aplt. Br. at 13.  More precisely, plaintiffs complain that the district court examined only whether the distinctions drawn by the Colorado legislature in the CCIA were "irrational and completely unrelated to any conceivable policy goal."  Order at 10.  According to plaintiffs, the rational basis test, properly formulated and applied, asks whether the classification at issue has "'a fair and substantial relation to the object of the legislation . . . .'"  Aplt. Br. at 17 (quoting Johnson v. Robison, 415 U.S. 361, 374 (1974)).

Although the plaintiffs have accurately quoted the language from the Supreme Court's 1974 decision in Johnson, that language does not correctly represent the Court's current view of the rational-basis standard, nor, does it appear, that it ever represented the controlling standard.  In United States Railroad Retirement Board v. Fritz, 449 U.S. 166

9

(1980), the Court reviewed its "pronouncements in this area" from the period of 1911 through 1980, and acknowledged that the standards it had applied "ha[d] not been altogether consistent . . . ." Id. at 174; see id. at 176 n. 10 ("The most arrogant legal scholar would not claim that all of these cases[, i.e., from 1911 through 1980,] applied a uniform or consistent test under equal protection principles."). In doing so, the Court noted that it had at times applied an extremely deferential formulation of the standard (asking only whether any state of facts reasonably could be conceived that would sustain the legislation), and at other times had employed the "fair and substantial relation to the object of the legislation" standard (i.e., the one being promoted by plaintiffs in this appeal). Id. at 174-75 (citing F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920) (employing the "fair and substantial relation" standard)). Importantly, the Court clarified the issue by holding that, where social or economic regulations are at issue, the proper rational-basis test is the more deferential one that asks simply whether there are plausible reasons for the legislative action. Id. at 176-79. Further, none of the Court's post-Fritz cases have disturbed, or otherwise placed into doubt, this clarification.[4] Thus,

_____

[4] Indeed, in its post-Fritz cases, the Court appears to have confined the "fair and substantial relation" test to those equal protection cases requiring "heightened review," rather than rational-basis review. E.g., United States v. Virginia, 518 U.S. 515, 591 n.6 (1996) (Scalia, J., dissenting) (noting that the "substantial relationship" standard is utilized in "intermediate scrutiny," rather than under rational basis review); Cleburne, 473 U.S. at 441 (noting that heightened equal protection review examines whether the restrictions or classifications at issue "'are substantially related to a legitimate state interest'" (quoting Mills v. Habluetzel, 456 U.S. 91, 99 (1982))).

10

plaintiffs are mistaken in suggesting that the "fair and substantial relation" test is the controlling rational-basis standard.

In sum, we conclude that the district court applied a proper formulation of the rational-basis test. We further conclude, as did the district court, that the Colorado legislature, by exempting airport smoking concessions from the CCIA's operation, rationally distinguished those concessions from the majority of other indoor facilities in the state that are open to the public, including the establishments owned, operated, and/or serviced by plaintiffs.

The judgment of the district court is AFFIRMED.