**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KATHLEEN CURRY; RICHARD
MURDIE; LINDA REES; GARY
HAUSLER,

        Plaintiffs-Appellants,

and

CAROL BLATNICK; WAYNE
BUCK; MANDY MIKULENCAK,

        Plaintiffs,

v.

BERNIE BUESCHER, in his official
capacity as Secretary of State of the
State of Colorado,[*]

        Defendant-Appellee,

and

LINDA DALEY, in her official
capacity as La Plata County Clerk and
Recorder,

        Defendant.

No. 10-1265
(D.C. No. 1:09-CV-02680-MSK-CBS)
(D. Colo.)

---

[*]    The unopposed motion to remove Linda Daley as an appellee is
GRANTED.

JOELLE RIDDLE; JACQUELINE
SALIT,

      Amici Curiae.

---

## ORDER AND JUDGMENT[**]

---

Before **TACHA**, **BRORBY**, and **MURPHY**, Circuit Judges**.**

---

This case involves the constitutionality of Colorado's requirement that

independent candidates for partisan public office be registered as unaffiliated with

a political party for nearly seventeen months before the general election if they

wish to appear on the general-election ballot. *See* Colo. Rev. Stat.

§ 1-4-802(1)(f)(I), (g) (2009).[1]  Plaintiff Kathleen Curry, an incumbent member of

the Colorado House of Representatives, changed her registration to unaffiliated

eleven months before the November 2010 general election and, therefore, is

---

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     In May 2010, the Colorado General Assembly changed the requirement, starting with the 2012 general election, to require unaffiliated registration "no later than the first business day of the January immediately preceding the general election for which the person desires to be placed in nomination."  2010 Colo. Legis. Serv. ch. 324, § 5; *see also id.* § 7.

barred from the ballot on any basis other than as a write-in candidate. She and the other Plaintiffs (voters eligible to cast ballots for Representative Curry if she qualified for the 2010 ballot) brought this action under 42 U.S.C. § 1983 against the Colorado Secretary of State, Bernie Buescher, to overturn the statutory registration period. The district court granted the Secretary summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Representative Curry is presently the State Representative for Colorado State House District 61. She was first elected to that office as a member of the Democratic Party of Colorado in 2004, and was re-elected as a Democrat in 2006 and 2008. In December 2009, however, she changed her party affiliation to unaffiliated, hoping to seek re-election as an independent candidate on the November 2010 general-election ballot. She explains that her "political philosophy and beliefs" caused her to "clash[ ]" with Democratic party leaders on several issues. Aplt. App. at 187.

Under Colorado law, unaffiliated candidates for partisan public offices in general elections must be nominated by a petition signed by eligible electors. Colo. Rev. Stat. § 1-4-802(1)(c). The petition must be filed no later than 140 days before the general election. *Id.* § 1-4-802(1)(f)(I). No person, however, may be nominated by petition as an unaffiliated candidate "unless the person was registered as . . . unaffiliated . . . for at least twelve months prior to the last date

the petition may be filed." *Id.* § 1-4-802(1)(g). Consequently, a person must have registered as unaffiliated at least one year and 140 days before the upcoming general election, i.e., sixteen-and-three-fifths months. So long as the petition is timely, in the proper form, and bears the requisite number of signatures, and the petitioner is sufficiently dissaffiliated, the petitioner qualifies for the general-election ballot without further obstacles.

For the 2010 election, Representative Curry needed to register as unaffiliated by June 15, 2009. She missed that date, however, by six months, because she was unaware of Colorado's disaffiliation laws.[2] In developing her constitutional challenge, Representative Curry contrasts the laws applicable to unaffiliated candidates with those applicable to partisan candidates, all ultimately seeking general-election ballot access.

A person seeking a party's nomination to run in the general election must first win the party's primary election. *Id.* § 1-4-101(1), (3). In order to compete in the primary, however, the person must either be selected during the party's assembly process or file a petition. *Id.* § 1-4-102.

If access to the primary-election ballot is through the party's assembly process, the person must have been affiliated with that party during the twelve-

---

[2]     For convenience, we refer to the Colorado law as a disaffiliation law, as it certainly is in this case. The law, however, may be broader than disaffiliation and, if so, apply to those seeking ballot access who have never formally affiliated with a political party.

month period before the assembly, which must be held at least 70 days before the primary election. *Id.* § 1-4-601(1), (4)(a). The primary is held three months before the general election. *See id.* §§ 1-4-101(1), -104(17). The twelve-month period prior to the assembly, however, may be shortened by major party rules or minor party constitutions and by-laws. *Id.* §§ 1-4-601(4)(a), -1304(2)(b), (c). For instance, the Democratic Party of Colorado has essentially cut nearly six months from that period. *See* Aplt. App. at 74 (Democratic Party rule stating that "[a] person shall be eligible for designation by an assembly . . . if that person has been a registered Democrat for a period of at least 12 months immediately preceding the date of the General Election").

On the other hand, if the person seeks to be placed on the party's primary-election ballot through petition, *id.* §§ 1-4-801(1), -802(1)(a), the petitioner must have been affiliated with the party for at least twelve months before filing the petition, *id.* §§1-4-801(3), -802(1)(g), which can be "no later than seventy-five days before the primary election," §§ 1-4-801(5), -802(1)(f)(II). Unlike the political-party assembly-nomination process, there is no statutory provision allowing the affiliation period for the petition-nomination process to be shortened. Consequently, a political-party petitioner must be affiliated with the party for seventeen-and-one-half months before the general election.

Plaintiffs sued Secretary Buescher in March 2010.[3]  They alleged that the disaffiliation requirement in section 1-4-802(1)(g) violates their rights to freedom of speech, freedom of association, and equal protection.  The parties stipulated that the requirement was intended "to prevent partisan candidates from entering races as unaffiliated candidates in order to circumvent the party primary process or to bleed off votes from another candidate, and as part of a more general statewide policy intended to promote political stability and protect the integrity of Colorado's political process."  Aplt. App. at 193.[4]  The district court reviewed the

_____

[3]     Specifically, Plaintiffs joined litigation brought several months earlier by La Plata County Commissioner Joelle Riddle and several electors who supported her.  Like Representative Curry, Commissioner Riddle had untimely switched her party affiliation to unaffiliated and was barred by section 1-4-802(1)(g) from having her name placed on the ballot.  Commissioner Riddle has since decided not to seek re-election, and thus has not appealed the district court's decision.  Nevertheless, she seeks leave to file an amicus brief along with Jacqueline Salit, a New York resident and President of the Committee for a Unified Independent Party, Inc.  We grant the request.

[4]     In more detail, the parties agreed that the statute serves Colorado's interests

    by thwarting frivolous or fraudulent candidates, avoiding voter
    confusion, preventing the clogging of election machinery required to
    administer an election, maintaining the integrity of the various routes
    to the ballot (i.e., preventing a potential candidate defeated in a
    primary from petitioning onto the ballot, thereby defeating the
    purpose of the primary system), presenting the people with
    understandable choices between candidates who have not previously
    competed against one another in a primary, refusing to recognize
    independent candidates who do not make early plans to leave a party
    and take the alternative course to the ballot, working against
    independent candidacies prompted by short-range political goals,
    pique, or personal quarrel, providing a substantial barrier to a party
                                                                    (continued...)

-6-

stipulation, considered the parties' arguments, and granted the Secretary summary judgment, prompting this appeal.

## DISCUSSION

### I. Standard of Review

"We review de novo the grant of summary judgment to determine whether any genuine issues of material fact were in dispute and, if not, whether the district court correctly applied the substantive law at issue." *Anderson v. Commerce Constr. Servs., Inc.,* 531 F.3d 1190, 1193 (10th Cir. 2008). "Because the parties do not dispute the facts, we have before us a purely legal question." *Id.* (quotation omitted).

### II. Freedom of Speech and Freedom of Association

The First Amendment, made applicable to the states by the Fourteenth Amendment, bars government from passing laws that "abridg[e] the freedom of speech." U.S. Const. amend. I. Freedom of association is "an indispensable means of preserving" free speech, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618

---

[4](...continued)

> fielding an "independent" candidate to capture and bleed off votes in the general election that might well go to another party, ensuring that voters are not presented with a laundry list of candidates who have decided on the eve of a major election to seek public office, reserving the general election ballot for major struggles and not allowing it to be used as a forum for continuing intraparty feuds, and limiting the names on the ballot to those who have won the primaries and those independents who have properly qualified.

Aplt. App. at 193-94.

(1984), and is protected by the First Amendment, *see Healy v. James*, 408 U.S. 169, 181 (1972).

To determine whether a state's ballot-access restrictions comport with the First Amendment, we must weigh the alleged constitutional injury against the state's justifications for restricting ballot access:

> [We] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. [We] then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, [we] must not only determine the legitimacy and strength of each of those interests; [we] also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors [will we be] in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).[5]

### A. Character and Magnitude of the Constitutional Injury

---

[5]     In *Crawford v. Marion County Election Board,* 553 U.S. 181, 190 n.8 (2008), the Supreme Court per Justice Stevens (who had also authored *Anderson*) described *Anderson*'s test as a "flexible" approach, and indicated that strict scrutiny does not apply "to all laws imposing a burden on the right to vote." In *ACLU of New Mexico v. Santillanes*, 546 F.3d 1313, 1321 (10th Cir. 2008), this court seemingly approved the district court's characterization of the *Anderson* test as a form of "intermediate scrutiny." In *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740, 742 (10th Cir. 1988), we applied *Anderson* and suggested that strict scrutiny was not an option in ballot-access cases, a position followed by the district court in this case. In any event, it is clear that *Anderson*'s formulation of the test governs, and we, like the district court, apply it here.

Plaintiffs argue Colorado's requirement that Representative Curry disaffiliate 12 months before the deadline for filing a nominating petition results in a significant constitutional injury, as she is now denied the opportunity to otherwise qualify for appearance on the general-election ballot as an independent candidate.[6]  We note Representative Curry's acknowledgment that her untimely disaffiliation was due to her lack of awareness of the requirements of Colorado law, rather than any component of the disaffiliation statute.  Aplt. App. at 188.  Plaintiffs do not identify any practical impediment to Representative Curry meeting the requirements of section 1-4-802(1)(g) and disaffiliating twelve months before the deadline for filing a nominating petition.  Indeed, she concedes that she had become "increasingly disenchanted with party politics over a period of five years" before she eventually disaffiliated.  Aplt. App. at 187.  Nor do Plaintiffs contend that the disaffiliation deadline would have burdened their efforts to gather signatures for a nominating petition.  *Cf. Anderson*, 460 U.S. at

---

[6]     Plaintiffs purport to challenge Colorado's disaffiliation period both on its face and as applied to Representative Curry.  As the district noted, however, they essentially advance only an as-applied challenge, ultimately focusing their arguments on the effect the election statutes have when applied to their particular circumstances.  Thus, we address the disaffiliation period's constitutionality only as applied.  In so doing, we note that "[f]acial challenges are disfavored[,]" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008), and generally fail if any "set of circumstances exists under which the [law] would be valid," *id.* at 449.  Our conclusion that the disaffiliation period is not unconstitutional as applied to Representative Curry is one such set of circumstances that would prove fatal to a facial challenge of section 1-4-802(1)(g).

792 (noting that a state's deadline for independent candidates to file a nominating petition burdened the candidate's signature-gathering efforts in the context of a nationwide campaign). Thus, the sole constitutional injury Plaintiffs present is the denial of ballot access.

Denial of ballot access to a prospective candidate intrudes upon "important [constitutional] rights," *Rainbow Coalition of Okla. v. Okla. State Elec. Bd.*, 844 F.2d 740, 743 (10th Cir. 1988), held by both the candidate and her supporters, *see Anderson*, 460 U.S. at 786-88. Accordingly, we must address whether Colorado's interests in imposing its disaffiliation requirement justify excluding Representative Curry's name from the ballot.

## B. The Weighing Process

"[N]ot all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." *Anderson*, 460 U.S. at 788. "'[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Thus, "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions" on election procedures. *Id.*

*Storer v. Brown* is the seminal Supreme Court decision addressing a state's disaffiliation requirement for independent candidates. There, faced with a First

-10-

Amendment challenge from independent candidates and their supporters, the Court upheld a California statute that required independent candidates to be disaffiliated from political parties for the twelve-month period before the primary election. 415 U.S. at 728.[7] The Court explained that a disaffiliation requirement maintains "the integrity of the various routes to the ballot" by

> refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party.

*Id.* at 735. Accordingly, the Court declared that the twelve-month disaffiliation period furthered California's interest in the stability of its political system, and that the state's interest was compelling, "outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." *Id.* at 736. And while other methods might suffice, the Court indicated that the Constitution did not require California to sacrifice the political stability of its election system, "with profound consequences for the

---

[7]     In contrast, Colorado's twelve-month disaffiliation-period is tied to "the last date the [nominating] petition may be filed," Colo. Rev. Stat. § 1-4-802(1)(g). If, however, the disaffiliation periods in *Storer* and this case are equalized, connecting them to the November general elections, it results in a seventeen-month disaffiliation period in *Storer* and a sixteen-and-three-fifths months period in this case.

entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot." *Id.* at 736.

The decision in *Storer* led both this court and the Colorado Supreme Court to declare Colorado's twelve-month disaffiliation period constitutional. In *Thournir v. Meyer*, 909 F.2d 408 (10th Cir. 1990), this court viewed Colorado's disaffiliation period[8] as a reasonable restriction intended "to protect the integrity of the party system and to prohibit frivolous candidacies." *Id.* at 411. As such, the disaffiliation requirement did not unduly burden the First Amendment rights of an unaffiliated candidate. *Id.* (citing *Storer*, 415 U.S. at 733).

In *Colorado Libertarian Party v. Secretary of State of Colorado*, 817 P.2d 998 (Colo. 1991), the Colorado Supreme Court cited *Thournir* with approval, quoted extensively from *Storer*, extended the disaffiliation requirement to candidates of "political organizations," and concluded that "Colorado's one-year unaffiliation requirement preserves the state's compelling interest in maintaining the integrity of its ballot access system, and thus promotes the overall stability of the state's election process, without unfairly or unnecessarily impinging upon the [political organization's] associational rights." *Id.* at 1004 (quotations and citation omitted). The court also observed that while "a disaffiliation provision

---

[8]     When *Thournir* was decided, Colorado's disaffiliation requirement was contained in section 1-4-801(1)(i) (1980), and was worded much like the current version: "[n]o person shall be placed in nomination by petition unless the person . . . was registered as unaffiliated . . . for at least twelve months prior to the date of filing of the petition."

-12-

may preclude . . . voters from supporting a particular ineligible candidate, they remain free to support and promote other candidates who satisfy the State's disaffiliation requirements." *Id.* (quotation omitted).

Plaintiffs urge us to disregard *Storer*, *Thournir*, and *Colorado Libertarian Party*. They argue that in *Storer*, the challenged disaffiliation statute did not discriminate between independent candidates and party candidates. Similarly, they contend that Colorado's "affiliation requirements for independent candidates and candidates for political parties were essential[ly] the same" when those cases were decided, but is no longer true today. Aplt. Opening Br. at 26 n.4; *see also* Reply Br. at 10 n.3.

To be sure, in *Storer* the Supreme Court observed that California's disaffiliation statute "involve[d] no discrimination against independents," as the statute required independents to "be clear of political party affiliations for a year before the primary" and party candidates to be disaffiliated from other parties a year before filing a declaration of candidacy. 415 U.S. at 733-34. Both *Thournir* and *Colorado Libertarian Party* addressed Colorado's disaffiliation statute before political parties were permitted to vary the disaffiliation period by a major party's rules or a minor party's constitution or by-laws. *See* Colo. Rev. Stat. §§ 1-4-601(4)(a), -1304(2)(b), (c). As we indicated earlier, however, the ability of major and minor parties to vary an affiliation/disaffiliation period applies only when the putative candidate seeks nomination through the assembly process. When the

road to the ballot involves a nominating petition, all hopeful candidates are subject to an invariable twelve-month period. *See id.* §§ 1-4-801(3), -802(g). Consequently, the burdens of the twelve-month disaffiliation requirement are shared equally by petitioning independents and petitioning party members.

Granted, an individual like Representative Curry, whose political philosophy motivates her to run as an independent rather than as a member of a political party, has no way to invoke a shortened disaffiliation period. The First Amendment, however, does not require Colorado to so "precisely draw[ ]" its election statutes as to eliminate every disparity between independent and party candidates, at least in cases involving disaffiliation requirements whose effects are felt "wholly within the boundaries of [the state]." *See Anderson*, 460 U.S. at 804, 805 (stating that a state's justification for imposing filing restrictions that "discriminate against independents" is weaker in "nationwide Presidential election[s]"). It is enough that Colorado's disaffiliation statutes are "generally[ ]applicable and evenhanded" for all petitioning candidates. *See id.* at 788 n.9.[9]

Further, the Secretary has suggested valid reasons for treating petitioning individuals differently than assembly-bound individuals in terms of the rigidness

---

[9] This fact alone—that both independent and party candidates who seek the ballot by petition are bound to an unalterable disaffiliation period—defeats Plaintiffs argument that Colorado's disaffiliation statute discriminates on the basis of an individual's political beliefs.

of disaffiliation periods.  For instance, individuals "who subject themselves to the assembly process face scrutiny by those who are active within their party and who are likely to have greater allegiance to the party.  These [prospective] candidates must obtain support at the precinct, county and state levels."  Aplee. Br. at 22.  Consequently, the assembly process can winnow out those prospective candidates motivated by "short-range political goals, pique, or personal quarrel," *Storer*, 415 U.S. at 735, notwithstanding a truncated disaffiliation period.  In contrast, petitioning independent candidates proceed directly to the general-election ballot without being subjected to a similar winnowing process.

Plaintiffs also argue that the General Assembly's recent change of the disaffiliation period from "at least twelve months prior to the last date the [nominating] petition may be filed," Colo. Rev. Stat. § 1-4-802(1)(g), to "the first business day of the January immediately preceding the general election," 2010 Colo. Legis. Serv. ch. 324, § 5 (effective for the 2012 general election), shows that the state's interests can be served by a less burdensome disaffiliation requirement.[10]  While that may be true, the United States Supreme Court has not declared the presence of a "less drastic way of satisfying [the state's] legitimate interests" determinative in a disaffiliation case.  *See Anderson v. Celebrezze*, 460 U.S. at 806 (quotation omitted).  Moreover, in *Thournir*, this

---

[10]    We note that Representative Curry sponsored the bill in the House.  In its middle stages, the bill would have had immediate effect.  Aplt. App. at 224-25, 230.

-15-

court closed the door to any inquiry into whether the state is pursuing its interests regarding disaffiliation in the least restrictive means possible. 909 F.2d at 409 n.4 (citing *Rainbow Coal. of Okla. v. Okla. State Elec. Bd.*, 844 F.2d 740, 742 (10th Cir. 1988), and declining to subject disaffiliation statute to strict scrutiny). Thus, the Colorado Assembly's decision to truncate the disaffiliation period, starting in 2012, does not warrant the conclusion that the longer period applicable to Representative Curry is unconstitutional.

Plaintiffs next contend that Colorado's justifications for requiring disaffiliation do not apply to Representative Curry because she is a legitimate candidate, having already served three terms in office and run unopposed in the past two elections. There is absolutely nothing in the election statutes, however, that allows a case-by-case inquiry into whether operation of the disaffiliation requirement is warranted. It is beyond cavil that we are without authority to legislate such an inquiry.

As we noted earlier, the Supreme Court in *Storer* held that California's interest in "maintaining the integrity of the various routes to the ballot," achieved through a twelve-month disaffiliation provision, outweighed independent candidates' interest in making a late "decision to seek independent ballot status." 415 U.S. at 736. Colorado's interest is no less compelling in this case, and is achieved through a similar disaffiliation requirement. Plaintiffs have failed to convince us that we should weigh the pertinent interests any differently than the

-16-

Supreme Court did in *Storer*. Nor have they identified a principled basis on which to distinguish this case from *Thournir* and *Colorado Libertarian Party*, both of which upheld Colorado's disaffiliation requirement against similar First-Amendment challenges. Thus, we conclude that Colorado's compelling interest in political stability, which required Representative Curry to disaffiliate from the Democratic Party twelve months before filing a nominating petition, outweighs her interest in pursuing an independent candidacy after the statutory deadline.

Consequently, the twelve-month disaffiliation requirement in section 1-4-802(1)(g) does not violate the Plaintiffs' First-Amendment rights. *See ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1322 (10th Cir. 2008) ("Restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process are generally not considered severe restrictions and are upheld." (quotation omitted)).

### III. Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1322 n.10 (10th Cir. 2010) (quotation omitted). Conversely, while a state "must treat like cases alike," it "may treat unlike cases

-17-

accordingly." *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quotation omitted).

For persons to be similarly situated, they must be alike "in all relevant respects." *Id.* Plaintiffs cursorily assert that Representative Curry is similarly situated to "political party candidates," but is treated worse because political parties can, and have, shortened the disaffiliation periods for their members. Aplt. Opening Br. at 46.[11] As we have already pointed out, however, only those persons who pursue the assembly path toward their party's nomination are eligible for shortened disaffiliation periods. Independents, like Representative Curry, do not have to participate in assemblies or even a subsequent primary election. Instead, once independents have the requisite number of signatures on a nominating petition, they go straight to the general election ballot. *See* Colo. Rev. Stat. § 1-4-802. Thus, Representative Curry is not similarly situated to persons in a political party seeking to be designated at an assembly so they can compete for their party's nomination in a primary election.

Nor is Representative Curry similarly situated to party members whose political course starts by petition, because a qualifying petition in a contested party race only gets that individual onto a primary ballot. *See id.* §§ 1-4-801(1)

___

[11]    We need not address whether Plaintiffs Richard Murdie, Linda Rees, and Gary Hausler have standing to challenge the section 1-4-802(1)(g) bar to Curry's candidacy on equal-protection grounds because Representative Curry clearly has standing to invoke our jurisdiction.

(major parties), -1304(1.5)(a) (minor parties). Unlike independents then, a qualifying political-party petitioner does not necessarily qualify for the general-election ballot. A qualifying political-party petitioner will appear on the general-election ballot only after winning her party's primary or having no primary challenger. *See id.* §§ 1-4-104.5(2) (major parties), -1304(1.5)(d) (minor parties); *see also Storer*, 415 U.S. at 745 (recognizing that "the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other").

Even if we were to conclude that Representative Curry is similarly situated to petitioning-party members, she would be unable to establish an equal-protection violation. Colorado's election statutes prescribe the same period for *all* petitioning plaintiffs whether they are independents or members of a political party, i.e., twelve months before filing a nominating petition. *See* Colo. Rev. Stat. §§ 1-4-801(3) (major parties), -802(1)(g) (independents and minor parties). Moreover, these statutes treat independents *better* than party petitioners when the affiliation/disaffiliation periods are measured from the date of the general election.[12]

---

[12] Independents have a shorter period because their petitions are due no later than 140 days before the *general* election, whereas major and minor party members' petitions are due no later than seventy-five days before the *primary* elections. Colo. Rev. Stat. §§ 1-4-802(f)(I) (independents), -801(5) (major parties), -802(f)(II) (minor parties). As noted earlier, this works out to seventeen-and-one-half months leading up to the general election for party members, but

(continued...)

Plaintiffs' equal-protection challenge fails.

---

[12](...continued)
only sixteen-and-three-fifths months preceding the general election for independents.

To avoid this fact, Plaintiffs contend that "Colorado cannot impose any affiliation requirements on political parties, no matter which method a particular candidate seeks to obtain access to the primary ballot." Aplt. Opening Br. at 56. The import of this contention, however, is not apparent in the context of an equal-protection challenge. Additionally, Plaintiffs have not demonstrated how they have standing to assert the constitutional rights of political parties. Moreover, the Supreme Court has not declared affiliation/disaffiliation periods per se unconstitutional. *See Storer*, 415 U.S. at 736; *cf. Tashjian v. Repub. Party of Conn.*, 479 U.S. 208, 224 (1986) (holding, in a First-Amendment case, that Connecticut could not prevent a political party from opening its primary election to unaffiliated voters, and distinguishing *Storer* on the basis that Connecticut was essentially trying to "protect[ ] the integrity of the Party against the Party itself").

## CONCLUSION

The judgment of the district court is AFFIRMED.  The motion for leave to file an amicus brief, submitted by Jacqueline Salit and Joelle Riddle, is GRANTED.  The Secretary's motion requesting that we supplement the record and take judicial notice of Representative Curry's pursuit of a write-in candidacy is DENIED.[13]

Entered for the Court


Michael R. Murphy
Circuit Judge

---

[13] Anticipating the possibility that her appeal of the district court's order might not succeed, Representative Curry has begun the steps necessary to appear on the general-election ballot as a write-in candidate.  The Secretary argues that "because [Representative Curry] has altered her candidate status," this case may now be moot and beyond this court's jurisdiction.  Mot. to Supp. & Take Notice at 3.  The Supreme Court, however, has clearly stated that the option of pursuing a write-in candidacy "is not an adequate substitute for having the candidate's name appear on the printed ballot." *Anderson*, 460 U.S. at 799 n.26.  Consequently, this case has not become moot by Representative Curry's pursuit of a fall-back, write-in strategy.